Gloria L. Franklin          San Francisco Bankruptcy Court          (415) 268-2300
Clerk of Court                      235 Pine St.
                                 P.O. Box 7341
                          San Francisco, CA 94120-7341          **FILED**

                                                               MAR 2 6 2008

                                                       UNITED STATES BANKRUPTCY COURT
Richard W. Wieking, Clerk                                      SAN FRANCISCO, CA
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102-3489

                              DISTRICT COURT # C-08-01239 WHA **FILED**

Re: *Pacific Gas and Electric Co.*          01-30923 DM
                                       Judge Dennis Montali          MAR 2 7 2008

                                                       RICHARD W. WIEKING
                                                       CLERK U.S. DISTRICT COURT,
                                                       NORTHERN DISTRICT OF CALIFORNIA

Dear Mr. Wieking:

[ ] Enclosed please find a conformed copy of the notice of appeal, election to district court
document, appellant designation, appellee designation, statement of issues, designated items to
form the record on appeal, a certified copy of the docket and order being appealed for assignment
to a district court judge.

[ ] Enclosed please find the notice of appeal, certified copy of the docket and order being
appealed and related papers from BAP and designated items to form the record on appeal for
assignment to a district court judge.

**[X ] Enclosed please find the record of designated items and a certificate of record for an
appeal that has been previously sent to the district court.**

[ ] Enclosed please find a Bankruptcy Judge's Recommendation that Appeal Be Dismissed and
the Notice of Appeal and associated documents filed with the Bankruptcy Court.

Please acknowledge receipt of this appeal by stamping the district court case number on a copy
of this letter and return it to *United States Bankruptcy Court, San Francisco Division.*

                                       Gloria L. Franklin, Clerk
                                       United States Bankruptcy Court


Dated:  March 26, 2008          By: _____ANNA CHO-WONG_____
                                       Deputy Clerk    Anna Cho-Wong

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**FILED**

MAR 2 6 2008

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

In re: Pacific Gas and Electric Co.

            Debtor(s)/

Case Number: 01-30923 DM

Chapter: 11
Judge Dennis Montali

District Court #C-08-01239 WHA

## CERTIFICATE OF RECORD

    The undersigned Deputy Clerk of the U. S. Bankruptcy Court, San Francisco Division, hereby certifies that the record on appeal in complete and ready for transmission. The Designation of Record and Statement of Issues have been filed and copies are provided with this certificate. The status of the transcripts are as follows:

[X ] All transcript(s) requested by either the Appellant or Appellee have been filed with this court and a copy is attached.

[ ] No transcripts were requested by either the Appellant or Appellee.

Dated: 3/26/08

                                Gloria L. Franklin, Clerk
                                United States Bankruptcy Court

                    By:                ANNA CHO-WONG

                                Deputy Clerk   Anna Cho-Wong

1  McPHARLIN SPRINKLES & THOMAS LLP
   ELAINE M. SEID (Bar No. 72588)
2  PAUL S. AVILLA (Bar No. 120458)
   10 Almaden Blvd, Suite 1460
3  San Jose, California 95113
   Telephone (408) 293-1900
4  Facsimile (408) 293-1999

5  Attorneys for Creditor
   THE CITY OF SANTA CLARA
6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                         (San Francisco Division)

11

12  In re                                    ) Case No. 01-30923 SFM 11
                                             )
13  PACIFIC GAS and ELECTRIC COMPANY,        ) Chapter 11
    a California corporation                 )
14                                           ) **APPELLANT'S DESIGNATION OF THE**
                              Debtor.        ) **RECORD ON APPEAL**
15                                           )
    Tax I.D. No. 94-0742640                  )
16                                           )
                                             )
17  _____     )

18

19        Pursuant to Rule 8006 of the Bankruptcy Rules, The City of Santa Clara dba Silicon

20  Valley Power, creditor in the above entitled action and appellant herein, designates the record on

    appeal as follows:
21
                 **APPELLANT'S DESIGNATION OF THE RECORD ON APPEAL**
22
    1.    City of Santa Clara, dba Silicon Valley Power's Motion For Leave to Amend
23
          "Known Claim A" in Proof of Claim Number 12602 filed on December 21, 2007,
24
          Docket Number 16292.
25
    2.    Pacific Gas and Electric Company's Opposition to Motion to Amend Proof of Claim
26
          filed on January 10, 2008, Docket Number 16294.
27

28

    _____
    Appellant's Designation Of The Record On Appeal                              Page 1

3.    Declaration of Charles R. Middlekauff in Opposition to Motion to Amend Proof of Claim filed on January 10, 2008, Docket Number 16295.

4.    City of Santa Clara, dba Silicon Valley Power's Reply to Pacific Gas and Electric Company's Opposition and Electric Company's Opposition to Motion for Leave to Amend "Known Claim A" in Proof of Claim Number 12602 and Declaration of Ken Kohtz in Support of City of Santa Clara, dba Silicon Valley Power's Motion For Leave to Amend "Known Claim A" in Proof of Claim Number 12602 filed on January 18, 2008, Docket Number 16297.

5.    Order Denying City of Santa Clara, dba Silicon Valley Power's Motion For Leave to Amend "Known Claim A" in Proof of Claim Number 12602, entered on February 7, 2008, Docket Number 16299.

6.    Notice of Appeal filed on February 22, 2008, Docket Number 16301.

7.    Transcript of the hearing on February 1, 2008 of City of Santa Clara, dba Silicon Valley Power's Motion For Leave to Amend "Known Claim A" in Proof of Claim Number 12602.

DATED: March 3, 2008                    McPHARLIN SPRINKLES & THOMAS LLP

By: /s/ Paul S. Avilla
Paul S. Avilla
Attorneys for CITY OF SANTA CLARA,
dba, SILICON VALLEY POWER

1  McPHARLIN SPRINKLES & THOMAS LLP
   ELAINE M. SEID (Bar No. 72588)
2  PAUL S. AVILLA (Bar No. 120458)
   10 Almaden Blvd, Suite 1460
3  San Jose, California 95113
   Telephone (408) 293-1900
4  Facsimile (408) 293-1999

5  Attorneys for Creditor
   THE CITY OF SANTA CLARA
6

7                    UNITED STATES BANKRUPTCY COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9
                            (San Francisco Division)
10

11  In re                                    )  Case No. 01-30923 SFM 11
                                             )
12  PACIFIC GAS and ELECTRIC COMPANY,        )  Chapter 11
    a California corporation                 )
13                                           )  **APPELLANT'S STATEMENT OF ISSUES**
                            Debtor.          )  **PRESENTED ON APPEAL**
14  Tax I.D. No. 94-0742640                  )
                                             )
15

16
        Pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure, appellant The City
17
    of Santa Clara dba Silicon Valley Power ("SVP"), creditor in the above-entitled action, will raise
18
    the following issues on appeal of the Order Denying City of Santa Clara, dba Silicon Valley
19
    Power's Motion For Leave to Amend "Known Claim A" in Proof of Claim Number 12602,
20
    including any sub-issues integral to the issues stated:
21
        1.  Whether the Bankruptcy Court abused its discretion in denying The City of Santa
22
    Clara, dba Silicon Valley Power's Motion For Leave to Amend "Known Claim A" in Proof of
23
    Claim Number 12602.
24

25  DATED: March 3, 2008              McPHARLIN SPRINKLES & THOMAS LLP

26
                                     By:  /s/ Paul S. Avilla
27                                        Paul S. Avilla
                                          Attorneys for CITY OF SANTA CLARA,
28                                        dba, SILICON VALLEY POWER

    Appellant's Statement of Issues Presented on Appeal                        Page 1

1   McPHARLIN SPRINKLES & THOMAS LLP
    ELAINE M. SEID (Bar No. 72588)
2   PAUL S. AVILLA (Bar No. 120458)
    10 Almaden Blvd, Suite 1460
3   San Jose, California 95113
    Telephone (408) 293-1900
4   Facsimile (408) 293-1999

5   Attorneys for Creditor
    THE CITY OF SANTA CLARA
6

7

8

9

10              UNITED STATES BANKRUPTCY COURT

11             NORTHERN DISTRICT OF CALIFORNIA
12

13                    (San Francisco Division)

14

15  In re                              )  Case No. 01-30923 SFM 11
                                       )
16  PACIFIC GAS and ELECTRIC COMPANY,  )  Chapter 11
17  a California corporation           )
                                       )  City Of Santa Clara, dba Silicon Valley
18              Debtor.                )  Power's Motion For Leave to Amend
                                       )  "Known Claim A" in Proof of Claim
19  Tax I.D. No. 94-0742640            )  Number 12602
                                       )
20                                     )

21

22

23      The City of Santa Clara, dba "Silicon Valley Power" ("SVP") will and hereby does

24  move (the "Motion") the Court for entry of an order granting SVP leave to amend the "Known

25  Claim A" portion of SVP's proof of claim (Claim no. 12602) in light of the Court's Order on

26  Pacific Gas and Electric Company's ("PG&E's") Objection to a Portion of the Claim of the

27  City of Santa Clara dba "Silicon Valley Power" (Claim No. 12602), entered December 13,

28  2007.

1   This Motion is made under Bankruptcy Rule 7015 on the ground that the requested

2   amendment is appropriate and necessary in light of the Court's interlocutory determination that

3   the energy sales underlying Known Claim A were sales of energy by SVP to the California

4   Independent System Operator ("ISO"). SVP thus seeks to amend the Known A portion of its

5   claim to recover payment from PG&E's bankruptcy estate for such sales, based on PG&E's

6   breach of its duty as SVP's Scheduling Coordinator, to properly settle payment for such sales,

7   including the prosecution – on behalf of SVP -- of disputes with the ISO concerning such

8   payments. Thus, SVP seeks an order granting leave to amend SVP's proof of claim to add

9   language such that the Known Claim A portion of SVP's claim will read:

10      "Energy sold to PG&E by the City under the Interconnection Agreement
        between Pacific Gas and Electric Company and the City of Santa Clara, as
11      further decribed in Section 7, Supporting Documents, Contracts, Sections
12      1 and 2 and Invoices A-F, **or in the alternative, energy sold by SVP to**
13      **the California Independent System Operator ("ISO") with PG&E**
        **acting as Scheduling Coordinator, and with respect to such sales**
14      **PG&E failed to discharge its fiduciary and other duties to SVP to**
15      **ensure that such sales were appropriately settled with the ISO and**
16      **that SVP received full payment for such energy."**

17      This Motion will be based on this Motion, the accompanying Memorandum of Points

18  and Authorities, the record of this case and any evidence or argument presented at or prior to

19  the hearing on this Motion.

20      PLEASE TAKE FURTHER NOTICE that any written opposition to this Motion and the

21  relief requested herein must be filed with the Bankruptcy Court and served upon counsel for

22  the moving party on or before January 11, 2008.

23                      **MEMORANDUM OF POINTS AND AUTHORITIES**

24                                          **I.**

25                                  **INTRODUCTION**

26      This motion is being filed to enable SVP to amend its proof of claim to assert an

27  additional theory under which SVP could recover from PG&E's bankruptcy estate that portion

28

---

1    of SVP's claim identified as "Known Claim A" in the original proof of claim filed by SVP. The

2    motion is based on a factual finding recently made by the Court with respect to SVP's and

3    PG&E's respective roles in the transactions underlying Known Claim A, as well as matters

4    discovered by SVP since the filing of SVP's proof of claim.

5

## II.

6

## FACTUAL AND PROCEDURAL BACKGROUND

7       SVP filed its proof of claim (Claim No. 12602) in this case on October 3, 2001. The

8    SVP proof of claim included multiple claims, including "Known Claims" A and B (in the

9

10    aggregate amount of $3,285,612.44) and "Reserved Claims" A through G (in unstated

11    amounts). In its proof of claim, SVP reserved the right to amend and/or supplement its proof of

12    claim in the future.

13       Litigation of SVP's claims was effectively stayed in March 2004[1] (along with several

14    other categories of claims), pending the outcome of proceedings pending before the Federal

15    Energy Regulatory Commission ("FERC") which were expected to directly impact such claims.

16

17       As was provided for in the March 5, 2004 Order, PG&E filed its objection to certain

18    portions of SVP's Claim (the "Objection") on April 1, 2004 (Docket No. 15040). SVP filed its

19    response to the Objection (the "Opposition") on April 26, 2004 (Docket No. 15196). PG&E's

20    filed its Reply to the Opposition on August 18, 2004 (Docket No. 15670).

21       On April 6, 2006, by agreement between SVP and PG&E, the Bankruptcy Court issued

22    its "Order on Pacific Gas and Electric Company's Objection to Claim of the City of Santa

23    Clara, dba 'Silicon Valley Power' (Claim No. 12602)" (Docket No. 16165), confirming the

24

25    withdrawal or disallowance by consent of all portions of SVP's Claim other than "Known

26    Claim A" and "Reserved Claims A and C."

27

28

---

1    Known Claim A is in the amount of $3,241,097.53 and is described in SVP's proof of

2    claim as arising from:

3    *"Energy sold to PG&E by the City under the Interconnection Agreement*
4    *between Pacific Gas and Electric Company and the City of Santa Clara . . ."*

5    SVP has maintained that the energy sales underlying Known Claim A were sales by SVP to

6    PG&E. PG&E, on the other hand, has maintained that the energy sales underlying SVP's

7    Known Claim A were sales of energy by SVP to the ISO.

8
     On April 26, 2006, SVP filed its "Motion To Modify The March 5, 2004 Order On
9
10   Debtor's Motion For Extension Of Time To Object To Certain Proofs Of Claim" which sought

11   to establish a procedure by which SVP and PG&E would litigate a limited issue underlying

12   SVP's Known Claim A – namely, whether "Known Claim A" arises from wholesale sales of

13   power by SVP to PG&E under the Interconnection Agreement, dated as of September 30, 1983

14   between SVP and PG&E, or rather, were sales by SVP directly to the California Independent

15   System Operator Corporation (the "Disputed Issue").

16
     PG&E and SVP thereafter stipulated that the Disputed Issue be bifurcated and
17
18   determined by the Court, pursuant to a "Stipulation Re: Scheduling Order For Pacific Gas and

19   Electric Company's Objection to a Portion of the Claim of the City of Santa Clara, dba 'Silicon

20   Valley Power' (Claim No. 12602)."

21   Trial was held on the Disputed Issue on October 29-31, 2007. On December 13, 2007,

22   the Court entered an interlocutory "Order on Pacific Gas and Electric Company's Objection to

23   a Portion of the Claim of the City of Santa Clara, dba 'Silicon Valley Power' (Claim No.

24   12602)" in which the court made the factual finding that the energy sales underlying Known

25
26
27
28   [1] March 5, 2004 Order on Debtor's Motion For Extension of Time to Object to
     Certain Proofs of Claim (the "March 5,2004 Order") (PG&E Docket No. 14821).

1    Claim A were sales by SVP directly to the ISO, and not sales of power by SVP to PG&E under
2    the Interconnection Agreement between the parties.

3        During the trial of the Disputed Issue, PG&E argued that its role in the energy sales
4    underlying SVP's Known Claim A was merely that of "Scheduling Coordinator." The role of
5    Scheduling Coordinator was created under the ISO Tariff. As Scheduling Coordinator with
6    respect to the energy sales underlying SVP's Known Claim A, PG&E undertook to schedule
7    the energy with the ISO and to facilitate payment to SVP for such energy through the ISO ex
8    post market. This included prosecuting disputes with the ISO, on behalf of SVP, in those
9    circumstances where it was necessary to ensure that SVP's energy was properly accounted for
10   and that SVP receive payment in full for such energy.

11       During 2006 and 2007, during the discovery phase of the litigation of the Disputed Issue
12   SVP discovered for the first time that PG&E had filed in early 2001 settlement disputes with
13   the ISO concerning some of the SVP energy sales underlying SVP's Known Claim A. SVP
14   was not previously aware that PG&E had filed and prosecuted such disputes. SVP also
15   discovered evidence during 2006 and 2007 regarding the manner in which PG&E prosecuted
16   these disputes with the ISO. Based on that evidence, SVP believes that PG&E failed to
17   adequately and competently prosecute such settlement disputes and that, as a result thereof, the
18   ISO refused in the settlement process to pay in full for the energy sold by SVP underlying
19   Known Claim A, directly causing a shortfall in payment to SVP in the amount of Known
20   Claim A.

21       Given that the Court has now determined that PG&E was not the purchaser in the energy
22   transactions underlying Known Claim A, and that PG&E has effectively established that its
23   role in those transactions was that of SVP's Scheduling Coordinator, it is now apparent that
24   PG&E failed to discharge its duty to SVP as SVP's Scheduling Coordinator, resulting in the
25   very same loss to SVP that is represented by Known Claim A. Thus, SVP intends to assert, as
26   an alternative theory of recovery on Known Claim A, claims of negligence and breach of
27   fiduciary duty by PG&E with respect to such sales.

28

III.

ARGUMENT

A.    It is Necessary and Appropriate That SVP Be Allowed to Amend its Proof of Claim to Assert Additional Theories of Recovery For the "Known Claim A" Portion of SVP's Claim.

There is a long-established policy that liberally permits amendments to a proof of claim. See Bankr. R. 7015; Fed. R. Civ. P. 15; *In re Franciscan Vineyards, Inc.*, 597 F.2d 181, 182 (9th Cir. 1979), *cert. denied*, 445 U.S. 915 (1980). The crucial inquiry is whether the opposing party would be unduly prejudiced by the amendment. *In re Wilson*, 96 B.R. 257, 263 (9th Cir. BAP1988); *United States v. Hougham*, 364 U.S. 310, 316, 5 L. Ed. 2d 8, 81 S. Ct. 13 (1960). In determining whether the opposing party is prejudiced by a proposed amendment to a proof of claim, the court should consider such elements as bad faith or unreasonable delay in filing the amendment, impact on other claimants, reliance by the debtor or other creditors, and change of the debtor's position. *In re Wilson, supra,* at 262.

Here, SVP seeks to amend its proof of claim regarding its theory of recovery on the Known Claim A portion of SVP's claim. SVP has not unreasonably delayed in requesting leave to file such amendment, because the proposed amendment is based in part on an order entered by the Bankruptcy Court on December 13, 2007, less than two weeks before this motion is filed. It was only after such ruling that it was clear that PG&E's role with respect to the energy sales underlying Known Claim A was limited to that of Scheduling Coordinator. Moreover, the facts that support recovery by SVP of Known Claim A against the estate were only discovered during the discovery phase of the litigation of the Disputed Issue.

Given that the March 5, 2004 Order stayed litigation of the category of claims that include SVP's Known Claim A, PG&E would not be prejudiced by the proposed amendment.

1    Litigation of this and similar claims has not even commenced (with the exception of the

2    litigation of the Disputed Issue).

3                                    IV.

4                              CONCLUSION

5        For the foregoing reasons, SVP requests leave to amend its proof of claim as indicated

6    above.

7

8    DATED: December 21, 2007                 McPHARLIN SPRINKLES & THOMAS LLP

9

10

11                                    By: ___ /s/ Paul S. Avilla _____
                                           Paul S. Avilla
12                                         Attorneys for CITY OF SANTA CLARA,
                                           dba, SILICON VALLEY POWER
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  CHARLES R. MIDDLEKAUFF (Bar No. 148346)
   PACIFIC GAS AND ELECTRIC COMPANY
2  P.O. BOX 7442
3  San Francisco, California 94120
   Telephone: (415) 973-6971
4  Facsimile: (415) 973-6650
   Email: crmd@pge.com
5

6  SEDGWICK, DETERT, MORAN & ARNOLD LLP
   GAYLE L. GOUGH (Bar No. 154398)
7  AMBER RYE BRUMFIEL (Bar No. 215181)
   One Market Plaza
8  Steuart Tower, 8th Floor
   San Francisco, California 94105
9  Telephone: (415) 781-7900
   Facsimile: (415) 781-2635
10 Email: amber.rye@sdma.com

11
   Attorneys for Reorganized Debtor
12 PACIFIC GAS AND ELECTRIC COMPANY

13

14              UNITED STATES BANKRUPTCY COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16                  SAN FRANCISCO DIVISION

17

18

| | |
|---|---|
| 19 In re PACIFIC GAS AND ELECTRIC COMPANY, a California corporation, | CASE NO. 01-30923 DM |
| 20  Debtor. | Chapter 11 Case |
| 21 | **PACIFIC GAS AND ELECTRIC COMPANY'S OPPOSITION TO MOTION TO AMEND PROOF OF CLAIM** |
| 22 Federal I.D. No. 94-0742640 | |
| 23 | Date:  February 1, 2008 |
| 24 | Time:  10:00 a.m. |
| 25 | Place:  235 Pine Street, 22nd Floor |
| 26 | San Francisco, California |
| | Judge:  Hon. Dennis Montali |

27

28
   {00053928.DOC;1}
   _____
                PG&E's OPPOSITION TO MOTION TO AMEND PROOF OF CLAIM

1                              TABLE OF CONTENTS

2                                                                              Page

3

4    I.      INTRODUCTION.................................................................................................. 1

5    II.     FACTUAL BACKGROUND ................................................................................. 1

6            A.      The Transactions At Issue And SVP's Proof of Claim................................. 1

7            B.      SVP's Subsequent Knowledge And Failure To Amend Its Claim .............. 3

8            C.      SVP's Motion To Bifurcate And The Subsequent Trial ............................... 4

9    III.    ARGUMENT ........................................................................................................ 4

10           A.      SVP's New Claims Do Not Relate Back To Its Timely Proof of

11                   Claim .................................................................................................... 5

12           B.      SVP Has Not Demonstrated Excusable Neglect .......................................... 9

13   IV.     CONCLUSION ................................................................................................... 11

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{00053928.DOC;1}

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## FEDERAL

4

*Cases*

5

*Contract Lumber Company v. P.T. Moges*, 918 F.2d 1446 (9th Cir. 1990).......................... 9

*In re Enron*, 419 F.3d 115 (2nd Cir. 2005)............................................................................. 5

*In re Wilson*, 96 Bankr. 257 (9th Cir. BAP 1988)............................................................. 7, 8

*McGlinchy v. Shell Chemical Co.*, 845 F.2d 802 (9th Cir. 1988) .................................... 9, 10

*Moore v. R.G. Industries*, 789 F.2d 1326 (9th Cir. 1986) .................................................. 10

*Pacific Gas and Electric Company*, 311 B.R. 84 (N.Cal.Bankr.Ct. 2004) ................. 5, 6, 9

*Percy v. San Francisco General Hospital*, 841 F.2d 975 (9th Cir. 1988)........................ 5, 7

13

*Statutes*

14

Fed. Rule Civ. Proc 15 ......................................................................................................... 5

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{00053928.DOC;1}

1    **I.    INTRODUCTION**

2            After receiving an adverse decision in the bifurcated phase of this proceeding, the

3    City of Santa Clara dba Silicon Valley Power ("SVP") now seeks to amend Known

4    Claim A to assert new claims against PG&E based on conduct, transactions and

5    occurrences that are outside the scope of SVP's initial claim.  SVP's request to amend its

6    proof of claim comes more than six years after the claims bar date, despite the fact that

7    before the claims bar date SVP was well-aware of relevant information that could have

8    formed the basis of its belated proposed amendment.  SVP asserts in its motion that it did

9    not become aware of certain key information until 2006-2007, and thus its request to

10   amend is timely.  However, this assertion is contrary to the facts.  Contemporaneous

11   documents indicate that for years SVP has been fully aware of the facts it now claims that

12   it just recently learned.

13           To amend a claim after the claims bar date, a party must demonstrate that the

14   proposed amendment relates back to the original claim or, alternatively, that the delay in

15   filing the proposed amendment was based on excusable neglect.  As PG&E explains in

16   more detail below, SVP's proposed amendment does not relate back to its initial claim,

17   but rather concerns conduct and occurrences that are outside the scope of Known

18   Claim A.  Further, SVP's six year delay before requesting leave to amend, after it

19   received an adverse decision on the bifurcated issue, is not excusable neglect.  In short,

20   there is no factual or legal basis for SVP's motion and thus it should be denied.

21   **II.    FACTUAL BACKGROUND**

22           **A.    The Transactions At Issue And SVP's Proof of Claim.**

23           As the Court is now well-aware, the transactions at issue in SVP's Proof of Claim,

24   Known Claim A concern sales of energy in December 2000 and January 2001.  During

25   this time period, SVP sold power directly to the California Independent System Operator

26   ///

27   ///

28   ///

1  Corporation ("CAISO"), with PG&E acting as an intermediary to facilitate these sales.[1]
2  In March 2001, SVP received approximately $5.7 million of the $8.9 million it claimed it
3  was owed for December 2000 sales.

4       In a March 27, 2001 letter, PG&E explained to SVP that it had only received
5  partial payment from the CAISO of the amount claimed by SVP for December 2000
6  sales, and thus was not able to pass-through to SVP the full amount.[2] PG&E also
7  explained that it had expressed concern to the CAISO about the SVP payments and that
8  the CAISO had agreed to re-calculate the amount. PG&E indicated that if SVP had any
9  questions, it should contact Connie Lam or Issac Moore at PG&E. There is no record that
10  either party initiated further discussions on this matter before SVP filed its proof of claim.

11       PG&E filed its bankruptcy petition on April 6, 2001. SVP filed its proof of claim
12  on October 3, 2001 ("Claim"), which was the claims bar date for governmental entities.
13  Known Claim A, which is the only claim at issue here, stated that PG&E owes SVP
14  approximately $3.2 million for "[e]nergy sold to PG&E by [SVP] under the
15  Interconnection Agreement between Pacific Gas and Electric Company and the City of
16  Santa Clara . . .." In essence, SVP claimed that the December 2000 and January 2001
17  energy sales were between PG&E and SVP pursuant to a pre-existing agreement (*i.e.*, the
18  Interconnection Agreement) between the parties and thus PG&E had contractual liability
19  for these sales. SVP did not allege any other facts or or theory to support its assertion that
20  PG&E was liable for the $3.2 million that SVP claimed it is owed. For example, SVP did
21  not assert that PG&E had a fiduciary duty or responsibility to SVP as a Scheduling
22  Coordinator ("SC"). Indeed, SVP's claim does not even mention the CAISO or the SC
23  role.

24

25  [1] See Order on Pacific Gas and Electric Company's Objection To A Portion Of The Claim Of The City of
26  Santa Clara, dba "Silicon Valley Power" (Claim No. 12062), entered December 12, 2007 ("Objection
    Order") at 2; Transcript of Telephone Ruling from November 26, 2007 ("Ruling Transcript") at 12.

27  [2] Declaration of Charles R. Middlekauff in Opposition To SVP's Motion To Amend ("Middlekauff
    Dec."), Attachment A.
28

{00053928.DOC;1}                               -2-

1    **B.    SVP's Subsequent Knowledge And Failure To Amend Its Claim.**

2        In early January 2004, SVP employees notified PG&E that SVP had been talking
3    with the CAISO and understood that PG&E had filed disputes with the CAISO on the
4    SVP transactions and that the dispute window may be closed.[3] The CAISO also indicated
5    to SVP that the CAISO would check into whether there was an opening in the dispute
6    window. SVP did not seek at that time to amend its Claim at that time to assert liability
7    based PG&E's role as an SC or the dispute resolution process.

8        On March 5, 2004, the Court entered an order extending the time for PG&E to
9    object to certain claims, including SVP's Known Claim A. On April 1, 2004, PG&E filed
10   an objection to portions of SVP's claim, but did not file an objection to Known Claim A
11   based on the Court's extension order. SVP filed a response to PG&E's objection on
12   April 26, 2004 asserting that Known Claim A was based on the Interconnection Agree-
13   ment between PG&E and SVP and that there was no "valid reason to delay the resolution
14   of PG&E's objection to the City's Known Claim A."[4] Although SVP was aware at that
15   time about the disputes filed by PG&E, and the CAISO's position that the disputes were
16   "closed", SVP did not seek to amend its claim or make any assertion that there might be
17   any other basis for PG&E's alleged liability. Moreover, SVP did not make any reference
18   to PG&E's role as an SC, or the duties PG&E had as an SC, as a basis for liability.

19       On March 15, 2005, SVP and PG&E received an e-mail from the CAISO
20   regarding a dispute filed <u>by SVP</u> with the CAISO related to the December 2000 and
21   January 2001 transactions.[5] The CAISO's e-mail stated in part:

22       Although there were disputes filed on the original [SVP] settlement
         transactions in 2001, PG&E did not then dispute the subsequent
23       adjustments that were made to the settlement statements.

24

25

---

[3] *Id.*, ¶2.

[4] Response of The City of Santa Clara dba "Silicon Valley Power" To Debtor Objection To Its Claim
No. 12062, filed April 26, 2004 at 4.

[5] Middlekauff Dec., Attachment B.

28

1  Six SVP employees received this e-mail, including Steve Hance and Ray Camacho who

2  both testified at trial on behalf of SVP. Despite receiving this additional information,

3  SVP made no effort to amend Known Claim A.

4      **C.    SVP's Motion To Bifurcate And The Subsequent Trial.**

5      On April 21, 2006, SVP filed a motion to modify the Court's March 5, 2004

6  extension order and bifurcate the issue of whether the energy sales in December 2000 and

7  January 2001 were to PG&E under the Interconnection Agreement or directly to the

8  CAISO, allowing the bifurcated issue to proceed to trial. In its motion, SVP stated that if

9  the Court determined that the SVP power sales were to the CAISO, not PG&E, then

10  "SVP's Known Claim A would likely be disallowed, since the basis of the claim is that

11  the sales involved 'surplus power' under the Interconnection Agreement between SVP

12  and PG&E . . . ."[6] Although for more than two years SVP had been aware of the fact that

13  PG&E had filed disputes with the CAISO on these transactions, and that the dispute had

14  been closed, in its motion SVP did not indicate that this was an alternative basis for its

15  claim, nor did it indicate that it intended to amend Known Claim A.

16      On May 18, 2006, the Court entered an order bifurcating the issue of the power

17  sales and establishing a schedule for discovery and trial. Trial was conducted more than a

18  year later, on October 29-31, 2007. At no point before or during the trial did SVP request

19  leave to amend from the Court to amend Known Claim A. After the Court issued its

20  decision determining that the SVP energy sales were to the CAISO, not PG&E, SVP filed

21  this motion.

22  **III.    ARGUMENT**

23      To amend a timely-filed claim after the claims bar date, a party must demonstrate

24  that: (1) the amendment relates back to the timely-filed claim; and (2) it would be

25

26  ────────────────────

27  [6] Motion by City of Santa Clara dba Silicon Valley Power To Modify The March 5, 2004 order On
   Debtor's Motion For Extension Of Time To Object To Certain Proofs of Claim, filed April 21, 2006 at
   12.

28

{00053928.DOC;1}                                    -4-

1  equitable to allow the amendment.[7] Alternatively, parties have argued that they should be
2  able to amend a claim after the claims bar date based on an excusable neglect theory.[8] In
3  this case, it is unclear whether SVP is arguing that its proposed amendments relate back
4  to the Claim or its proposed amendment is justified by excusable neglect. However,
5  regardless of the theory relied on, SVP's motion should be denied. SVP's proposed
6  amendments do not relate back to Known Claim A, and its request for leave to amend six
7  years after its Claim was filed cannot be justified by excusable neglect.

8  **A.    SVP's New Claims Do Not Relate Back To Its Timely Proof of Claim.**

9  An amended claim relates back to the original claim when the amended claim
10 "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth
11 in the original pleading."[9] In determining whether an amended claim relates back, a court
12 may consider whether the operative facts and same kind of evidence would be used to
13 prove the amended claim.[10]

14 The Court's decision in *PG&E* is instructive for determining whether an amended
15 claim relates back to the original claim. In that case, Enron initially filed a claim
16 asserting that it was entitled to certain unpaid credits from PG&E associated with direct
17 access customers served by Enron. Enron also reserved its right to amend the initial
18 claim. In February 2003, Enron requested leave to amend its claim to include certain
19 charges that had been imposed on direct access customers served by Enron. When Enron
20 stopped providing direct access service, these customers filed a claim in Enron's
21 bankruptcy. Enron claimed that PG&E was responsible for these charges and sought to
22 amend its claim to recover both the unpaid direct access credits, and the direct access

---

23
24 [7] *In re Enron*, 419 F.3d 115, 133 (2nd Cir. 2005); *Pacific Gas and Electric Company*, 311 B.R. 84, 87 (N.Cal.Bankr.Ct. 2004) ("*PG&E*").

[8] *PG&E*, 311 B.R. at 87.

25
26 [9] Fed. Rule Civ. Proc 15(c)(2) (2007). Rule 15(c) also provides that an amended claim relates back to an original claim when "permitted by law" or "changes the party or the naming of the party." Neither of these provisions apply here.

27
28 [10] *Percy v. San Francisco General Hospital*, 841 F.2d 975, 978 (9th Cir. 1988) (denying motion to amend complaint); *PG&E*, 311 B.R. at 87-88.

{00053928.DOC;1}                                 -5-

PG&E's OPPOSITION TO MOTION TO AMEND PROOF OF CLAIM

1  charges that former Enron customers were now seeking from Enron. The Court

2  determined that Enron's proposed amendment did not relate back to its original claim

3  finding "[t]he theory underlying the Amended Claims is much more complex, and

4  involves a sequence of subsequent events, no facts of which have been pleaded in the

5  Original Claims . . .."[11] Thus, the Court denied Enron's motion to amend.

6           The outcome on SVP's motion should be the same. First, none of the facts now

7  included in SVP's proposed amendment were even mentioned in the Claim, although

8  SVP was aware of these facts at the time it filed the Claim. Known Claim A simply states

9  that SVP had made energy sales under the Interconnection Agreement to PG&E and that

10  PG&E was contractually liable for the full amount of these sales. SVP now proposes

11  adding facts and allegations regarding PG&E's role as an SC, and PG&E's "fiduciary and

12  other duties" to "appropriately settle" with the CAISO on SVP's behalf. Although SVP

13  was clearly aware of PG&E's role as an SC at the time it filed the Claim, SVP did not

14  mention this role in Known Claim A or assert that PG&E had liability based on "fiduciary

15  and other duties." Indeed, PG&E's role as an SC is never even mentioned in the Claim,

16  and PG&E's Responsible Participating Transmission Owner Agreement with the CAISO

17  is not listed in the Claim as a supporting document. Moreover, although SVP knew as

18  early as March 2001 that it had not been paid in full, and there had been a disagreement

19  between the CAISO and PG&E regarding the payment amount, SVP did not mention this

20  dispute or assert that PG&E had any liability for failing to dispute the CAISO's partial

21  payment. As SVP stated in its April 21, 2006 motion to bifurcate, Known Claim A was

22  based on a claim of power sales under the Interconnection Agreement and, if the Court

23  found the sales were to the CAISO, SVP's claim would "likely be disallowed." SVP is

24  now attempting, six years after the fact, to amend Known Claim A to add new facts and

25

26

27
_____

[11] *PG&E*, 311 B.R. at 88.

28

{00053928.DOC;1}                                   -6-

PG&E's OPPOSITION TO MOTION TO AMEND PROOF OF CLAIM
                                                                                CASE NO. 01-30923 DM
Case: 01-30923    Doc #: 16294    Filed: 01/10/2008    Page 9 of 14

1  assertions based on agreements and duties never mentioned in the Claim. SVP failed to
2  provide any notice of these issues in its Claim.[12]

3      Second, SVP's proposed amendment concerns events which were subsequent to
4  the events in the Claim, and can only be proved by separate, additional evidence. Known
5  Claim A addresses energy sales which occurred in December 2000 and January 2001.
6  SVP now seeks to amend its claim to include events that occurred months after the sales,
7  and outside of the context of the actual sales. In particular, SVP seeks to amend its Claim
8  to address the CAISO dispute process, and whether PG&E appropriately fulfilled its
9  responsibilities with regard to the dispute process. Similar to the situation in *PG&E*,
10  SVP's proposed amendment relates to events which occurred subsequent to the events in
11  the Claim and involve PG&E employees and CAISO employees who were not involved
12  in the December 2000 and January 2001 transactions.[13] The dispute process occurred
13  months after the sales were made and involve different employees and groups within
14  PG&E and the CAISO. The real-time schedulers who acted as intermediaries between
15  the CAISO and SVP were not involved in the dispute process. SVP's proposed
16  amendment would require additional discovery and evidence, including deposing CAISO
17  and SVP witnesses as to knowledge regarding the disputes, dispute settlement practices,
18  and the CAISO's decision regarding the disputes. Under Rule 15(c)(2), SVP's proposed
19  amendments, which address different occurrences and conduct, clearly do not relate back
20  to the Claim.

21      Finally, even if SVP's proposed amendment arose out of the same conduct,
22  transaction or occurrences and thus relates back to the Claim, SVP must also demonstrate
23  that it would be equitable to allow the amendment.[14] To determine whether an
24  amendment is equitable, courts will consider unreasonable delay in filing an amendment,

25  ---
[12] *Percy*, 841 F.2d at 979 (rejecting amendment when initial complaint failed to provide any notice of issue or claim).

26  [13] *See also Percy*, 841 F.2d at 979-980 (rejecting proposed amendment to complaint that concerned subsequent events and different parties than claims made in the original complaint).
27
[14] *Enron*, 419 F.3d at 133; *In re Wilson*, 96 Bankr. 257, 262 (9th Cir. BAP 1988) (cited in SVP's brief).
28

{00053928.DOC;1}                                  -7-
PG&E's OPPOSITION TO MOTION TO AMEND PROOF OF CLAIM
                                                         CASE NO. 01-30923 DM
Case: 01-30923      Doc #: 16294      Filed: 01/10/2008      Page 10 of 14

1    reliance by the debtor or other creditors, and change in debtor's position.[15] Here, there is

2    no equitable basis for SVP's proposed amendment. At the time of the claims bar date,

3    more than six years ago, SVP was aware of PG&E's role as an SC, that the CAISO had

4    not made full payment, and PG&E had expressed concerns to the CAISO about the

5    payment. In late 2003 and early 2004, SVP contacted the CAISO directly and discussed

6    the disputes filed by PG&E with the ISO. Although SVP learned these disputes had been

7    closed, it made no effort to amend its Claim at that time. In its April 2004 response to

8    PG&E's objection, SVP stated that PG&E's liability was contractually based, and never

9    indicated that PG&E had any fiduciary duty to SVP or that PG&E's alleged failure to

10    dispute charges was a separate basis for liability.

11        In March 2005, more than a year before SVP filed its motion to bifurcate, the

12    CAISO confirmed in an e-mail to SVP and PG&E that disputes had been filed by PG&E

13    in its role as an SC and rejected. In its April 2006 motion to bifurcate, SVP did not

14    indicate, or even suggest, that it intended to amend its Claim to include claims concerning

15    PG&E's "duty" as an SC or the disputes. Indeed, SVP's recent request for leave to

16    amend Known Claim A did not occur until <u>after</u> more than a year of discovery on the

17    bifurcated issue, a three-day trial, and an order rejecting SVP's assertion regarding sales

18    to PG&E under the Interconnection Agreement. SVP's six-year delay in asserting its

19    proposed amendment is clearly unreasonable. PG&E relied on SVP's description of

20    Known Claim A in agreeing to bifurcate this proceeding, conducting more than a year of

21    discovery, and preparing for trial. SVP should not be allowed at this late date, after a trial

22    on the bifurcated issue, to assert new claims based on facts that SVP has been aware of

23    for years.

24    ///

25    ///

26    ///

27

28

---

[15] *In re Wilson*, 96 Bankr. at 262.

PG&E's OPPOSITION TO MOTION TO AMEND PROOF OF CLAIM
CASE NO. 01-30923 DM

Case: 01-30923     Doc #: 16294     Filed: 01/10/2008     Page 11 of 14

**B.      SVP Has Not Demonstrated Excusable Neglect**

A party proposing an amendment may also claim excusable neglect to justify its failure to make a timely filing.[16] The party seeking an amendment has the burden of proof regarding excusable neglect.[17] In considering excusable neglect, the court may weigh various factors including the reason for delay, prejudice to the debtor, length of the delay and its impact on the proceeding, and whether the claimant acted in good faith.[18] All of these factors weigh against SVP's motion.

First, there is no reason for SVP's six-year delay in seeking an amendment. In its motion, SVP asserts, without any evidentiary support, that it did not learn that PG&E had filed disputes until 2006-2007, during the discovery phase on the bifurcated issue.[19] This assertion is simply wrong. As PG&E demonstrated above, SVP was aware in March 2001 that PG&E was raising the partial payment issue with the CAISO, contacted the CAISO directly in 2003 or early 2004 to discuss the disputes, and received information from the CAISO in March 2005 regarding the disputes. All of this occurred before SVP's motion to bifurcate was filed in April 2006. There is simply no reason for SVP to delay until December 2007 requesting leave to amend to include additional issues and claims. Courts have uniformly determined that undue delay is a valid and important reason for denying a party's request for leave to amend.[20]

Second, SVP's proposed amendment is prejudicial to PG&E. In its review and analysis of Known Claim A, PG&E relied on SVP's characterization of its contractual claim as being based on the Interconnection Agreement. SVP now seeks to amend its Claim to include allegations of a breach of fiduciary duty "and other duties to SVP" based on PG&E's role as an SC and PG&E's interactions with the CAISO. This theory of

---

[16] *PG&E*, 311 Bankr. at 89.

[17] *Id.*

[18] *Id.*

[19] SVP Motion at 5.

[20] *See e.g., McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 809 (9th Cir. 1988); *Contract Lumber Company v. P.T. Moges*, 918 F.2d 1446, 1454 (9th Cir. 1990).

{00053928.DOC;1}                                    -9-

1  liability, based on separate facts, events and obligations, raises entirely new issues that

2  PG&E would have to now consider, review and evaluate six years after the Claim was

3  filed. Moreover, SVP's motion comes more than a year after the parties agreed to

4  bifurcate this proceeding, conducted discovery, and participated in a trial on the

5  bifurcated issue. This kind of delay, after the parties have engaged in substantial

6  litigation activities, is clearly prejudicial.[21]

7      Third, the length of SVP's delay is unreasonable. As described above, although

8  SVP has been aware of the facts underlying its proposed amendment for years, it waited

9  until after it received an adverse decision on the bifurcated issue before filing its request

10 to amend. In other cases, courts have determined that delays much shorter than SVP's are

11 unreasonable.[22]

12     Finally, SVP has not demonstrated good faith. Although SVP has been aware for

13 years of PG&E's role as an SC and the disputes filed by PG&E, SVP waited until after an

14 adverse decision on the bifurcated issue to request leave to amend. SVP could have

15 requested leave to amend earlier, but did not. There is no evidence that SVP acted in

16 good faith.

17 ///

18 ///

19 ///

20

21

22

23

24

25 _____

[21] *Moore v. R.G. Industries*, 789 F.2d 1326, 1328 (9th Cir. 1986) (motion to amend filed two years after
26 original filing and after discovery and argument on motion to dismiss was prejudicial to non-moving
party); *McGlinchy*, 845 F.2d at 809 (new claims requiring additional discovery are prejudicial).

27 [22] *See e.g. Moore*, 789 F.2d at 1328 (two year delay unreasonable); *McGlinchy*, 845 F.2d at 809 (six
month delay from date of discovery to requesting leave to amend was unreasonable).

28

{00053928.DOC;1}                                    -10-

1  **IV.    CONCLUSION**

2      SVP's belated proposed amendment does not relate back to the Claim and is not

3  supported by excusable neglect. Having failed to meet its burden, SVP's motion should

4  be denied.

5

6  DATED: January 11, 2008           SEDGWICK, DETERT, MORAN & ARNOLD LLP

7

8                                    By:    */Sgd/*

9                                           AMBER RYE BRUMFIEL
                                            Attorneys for Reorganized Debtor
10                                          PACIFIC GAS AND ELECTRIC COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  CHARLES R. MIDDLEKAUFF (Bar No. 148346)
   PACIFIC GAS AND ELECTRIC COMPANY
2  P.O. BOX 7442
3  San Francisco, California 94120
   Telephone: (415) 973-6971
4  Facsimile: (415) 973-6650
   Email: crmd@pge.com
5
6  SEDGWICK, DETERT, MORAN & ARNOLD LLP
   GAYLE L. GOUGH (Bar No. 154398)
7  AMBER RYE BRUMFIEL (Bar No. 215181)
   One Market Plaza
8  Steuart Tower, 8th Floor
   San Francisco, California 94105
9  Telephone: (415) 781-7900
10 Facsimile: (415) 781-2635
   Email: amber.rye@sdma.com
11
   Attorneys for Reorganized Debtor
12 PACIFIC GAS AND ELECTRIC COMPANY

13

14                    UNITED STATES BANKRUPTCY COURT

15                    NORTHERN DISTRICT OF CALIFORNIA

16                        SAN FRANCISCO DIVISION

17

18

19 | In re PACIFIC GAS AND ELECTRIC | CASE NO. 01-30923 DM
   | COMPANY, a California corporation, |
20 |                                    | Chapter 11 Case
   |           Debtor.                  |
21 |                                    | **DECLARATION OF CHARLES R.
   |                                    | MIDDLEKAUFF IN OPPOSITION TO
22 | Federal I.D. No. 94-0742640        | MOTION TO AMEND PROOF OF
   |                                    | CLAIM**
23
                                         Date:   February 1, 2008
24                                       Time:   10:00 a.m.
                                         Place:  235 Pine Street, 22nd Floor
25                                               San Francisco, California
                                         Judge:  Hon. Dennis Montali
26

27

28 {00053880.DOC;1}

                    DECLARATION OF CHARLES R. MIDDLEKAUFF IN
                 OPPOSITION TO MOTION TO AMEND PROOF OF CLAIM

1    I, Charles R. Middlekauff, counsel for Pacific Gas and Electric Company

2    ("PG&E") in this proceeding, submit this declaration in opposition to the motion to

3    amend proof of claim filed by the City of Santa Clara dba Silicon Valley Power ("SVP")

4    based on my personal knowledge or, where indicated, information and belief.

5         1.    Attached as Attachment A is a true and correct copy of a March 27, 2001

6    letter from Camron Samii, a PG&E employee, to Wayne Ware, an SVP employee. This

7    letter was marked as Joint Trial Exhibit No. 24 in the hearing on the bifurcated issue that

8    was conducted before the Court on October 29-31, 2007.

9         2.    On information and belief, the files of Vicki La Due, a former PG&E

10   employee, contain handwritten notes of a conversation with Ken Kohtz of SVP. The

11   notes are dated January 6, 2004. The notes indicate that Mr. Kohtz stated that SVP had

12   been talking with the CAISO and that, based on those conversations, SVP was aware that

13   PG&E had filed disputes on the SVP energy sales and that the dispute window may be

14   closed. The notes also indicate that the CAISO told SVP it would check into whether

15   there was an opening in the dispute window. The notes are not marked as confidential or

16   settlement related materials. However, since Ms. La Due is no longer a PG&E employee,

17   we were unable to confirm whether the notes reflect aspects of settlement discussions.

18   The parties have had periodic settlement discussions since SVP filed its claim. To

19   prevent disclosure of any potential settlement related material, I am not attaching a copy

20   of the notes to this declaration. However, PG&E is willing to provide a copy of the notes

21   to counsel for SVP and, if counsel for SVP agrees they are not settlement related or, if

22   they are, agrees to waive any settlement privilege claim, PG&E will provide a copy of the

23   notes to the Court.

24        3.    Attached as Attachment B is a true and correct copy of a March 15, 2005

25   e-mail from the FERC Rerun Inquiries Team at the CAISO to a number of SVP and

26   PG&E employees. This letter was marked as Joint Trial Exhibit No. 28 in the hearing on

27   the bifurcated issue that was conducted before the Court on October 29-31, 2007.

28   {00053880.DOC:1}                              -1-

DECLARATION OF CHARLES R. MIDDLEKAUFF IN
OPPOSITION TO MOTION TO AMEND PROOF OF CLAIM

1    I declare that the above information is based on my personal knowledge or, where

2    indicated, information and belief. This declaration was executed in San Francisco,

3    California on January 10, 2008.

4

5                                          Charles R. Middlekauff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
{00053880.DOC;1}                                    -2-

# Attachment A



**Pacific Gas and
Electric Company**

Interconnection Services

US Mail:
Mail Code B13J
Pacific Gas and Electric Company
P.O. Box 770000
San Francisco, CA 94177-0001

March 27, 2001

Overnight Mail:
Mail Code B13J
Pacific Gas and Electric Company
77 Beale Street, 13th Floor
San Francisco, CA 94105-1814

## FILE COPY

Mr. Wayne Ware
City of Santa Clara
Electric Operations
1500 Warburton Avenue
Santa Clara, CA  95050

Subject:     Payment For December 2000 Excess Energy Deliveries

Dear Wayne Ware:

PG&E's payment for December 2000 excess energy deliveries is less than the amount
indicated on the City of Santa Clara's invoice to PG&E. PG&E passes through to City of
Santa Clara excess energy payments as-received from the CAISO. The current CAISO
payment is less than your invoice, due to the difference between the CAISO and City of
Santa Clara calculation methodologies.

PG&E would like to take this opportunity to emphasize several points concerning the
settlement of excess energy payments.

Due to constraints imposed by muni logical metering, the CAISO settles excess energy
transactions in two separate steps. As has been the case, excess energy continues to be
settled under the Uninstructed Energy Settlement process. Payment is calculated in this
step at the Uninstructed Energy (UE) price. However, if the CAISO has agreed with City
of Santa Clara to an Out of Market (OOM) price, then a second manual step is required
which settles for the amount exceeding the UE price (OOM – UE).

On September 1, 2000, when the CAISO implemented the 10-Minute Settlements
process, the UE price replaced the Expost price for excess energy settlements. The UE
price is set for each Scheduling Coordinator (SC), in each 10-minute interval, by either
the Incremental (INC) or the Decremental (DEC) price in that interval. And is based on
the SC's total portfolio net deviation. Therefore, the UE price will usually be different
for each SC and will rarely, if ever, match the published hourly Expost price.
Furthermore, the UE price cannot be determined until the CAISO notifies the SC of their
total portfolio net deviation.

Δ π EXHIBIT /(
Deponent _Shiller_
Date /2/11/06  Rptr
WWW.DEPOBOOK.COM

PGE0286

March 27, 2001
Mr. Wayne Ware
Page 2

In the OOM settlement process, the CAISO attempts to reduce payments for excess energy, by the amount of any muni load deviation which effectively reduces the muni excess energy delivery. It is PG&E's opinion that, the current CAISO methodology used to accomplish this goal is in error. PG&E has expressed this concern to the CAISO, and has indicated that it is the CAISO's responsibility to rectify.

The CAISO has agreed to recalculate the excess energy payments for December 2000, and is expected to make an upward adjustment. This adjustment may occur as soon as the April billing cycle. PG&E will continue to pass through any payments as they are received from the CAISO.

Please note that full payment, for any January 2001 excess energy transacted at an OOM price, is expected to be delayed as well.

If you have questions concerning this payment, please contact Connie Lam at 415-973-0521 or Issac Moore at 415-973-1735.

Sincerely,

Camron A. Samii
Manager, Billing and Settlement
Interconnection Services

cc:    Susan Dowling
       Judi Mosley

PGE0287

# Attachment B

## Kirsten, Christine

**From:** Hinman, Cynthia
**Sent:** Tuesday, May 10, 2005 3:32 PM
**To:** Hoffman, Kyle; Sibley, Chris
**Subject:** FW: SVP Dispute for ISO Rerun Dec 2000 - Jan 2001

FYI...This was our response to the rerun inquiry (consistent with our conference call)...
-----Original Message-----
**From:** FERC Rerun Inquiries
**Sent:** Tuesday, May 10, 2005 3:07 PM
**To:** Hinman, Cynthia; Shonkwiler, Daniel
**Subject:** FW: SVP Dispute for ISO Rerun Dec 2000 - Jan 2001

Our Response.

-----Original Message-----
**From:** FERC Rerun Inquiries
**Sent:** Tuesday, March 15, 2005 7:48 AM
**To:** Girlich, Tom; FERC Rerun Inquiries
**Cc:** Ann Hatcher; Betty Sargent; Chad Wozniak; Ray Camacho; Steve Hance; Kohtz, Ken; LaDue, Vicki; Moore, Issac; Middlekauff, Charles; Goodell, Terry; Zhang, Xiaofeng; Yip, Kelvin; Waas, Gene; Sibley, Chris
**Subject:** RE: SVP Dispute for ISO Rerun Dec 2000 - Jan 2001

Mr. Girlich,

Thank you for your Inquiry. The ISO researched into the issue described in the file attached to the e-mail below. All indications are that the issue resides between Pacific Gas & Electric and Silicon Valley Power, and not between PG&E and the ISO. The ISO has provided all of the detailed information needed to validate the results of the original settlements in 2001, the Preparatory Rerun, as well as the FERC Refund Rerun to all of it's Scheduling Coordinators. As the Scheduling Coordinator of record for the transactions settled by the ISO under PGAE and PGAB, PG&E is responsible for validating its statements based on the information supplied to it by the ISO. Although there were disputes filed on the original settlement transactions in 2001, PG&E did not then dispute the subsequent adjustments that were made to the settlements statements. Thus, PG&E accepted the results as published via failure to act as per ISO Settlements and Billing Protocol section 4.4.1.1. which state that if "a Scheduling Coordinator.......disputes any item or calculation set forth in its Preliminary or Final Settlement, it shall provide the ISO by electronic means with a notice of dispute within eight (8) Business Days from the date of issue of the Preliminary Settlement Statement or within ten (10) Business Days from the date of issue of the Final Settlement Statement".

Another piece of information that the ISO considered in this Inquiry research effort was that there were no Silicon Valley Power transactions on the list prepared by the ISO Legal Department as provided to the ISO Settlements Department for use in preparing the adjustments for the FERC Refund Rerun. This fact is supported by a similar document prepared by the ISO Compliance Department. In addition, no Silicon Valley Power transactions were included in the list of exempt transactions contained in the March 26, 2003, FERC Order on Proposed Findings. Thus, any settlement related to the Silicon Valley Power transactions as settled through PG&E as their Scheduling Coordinator must be mitigated as outlined by FERC.

In conclusion, the ISO believes the daily results of the FERC Refund Rerun are correct and has determined that there is no basis in this Inquiry to believe that the charges in question are incorrect. The ISO also believes that this response fully answers this Inquiry. For more information regarding the Refund Proceeding, the Preparatory Re-run and the Refund Re-run, please visit our website at: www.caiso.com. Thank you.

Sincerely,

The FERC Rerun Inquiries Team

-----Original Message-----

CAISO-SVP-06-    108
Response to SVP Subpoena
Case No. 01-30923 SFM 11

11/21/2006                                                    **CONFIDENTIAL**

JOINT TRIAL EXHIBIT
No. 28

**From:** Girlich, Tom
**Sent:** Wednesday, March 02, 2005 4:33 PM
**):** FERC Rerun Inquiries
**_c:** Ann Hatcher; Betty Sargent; Chad Wozniak; Ray Camacho; Steve Hance; Kohtz, Ken; LaDue, Vicki; Moore, Issac; Middlekauff, Charles; Goodell, Terry; Zhang, Xiaofeng; Yip, Kelvin
**Subject:** SVP Dispute for ISO Rerun Dec 2000 - Jan 2001

Please see attached disputes for SVP.

Tom Girlich
GRID ISO Settlements
Pacific Gas & Electric Company

<<FERCrerundisputeSVP_030205.doc>>

**CONFIDENTIAL**

CAISO-SVP-06-    109
Response to SVP Subpoena
Case No 01-30923 SFM 11

11/21/2006

1 | McPHARLIN SPRINKLES & THOMAS LLP
ELAINE M. SEID (Bar No. 72588)
2 | PAUL S. AVILLA (Bar No. 120458)
10 Almaden Blvd, Suite 1460
3 | San Jose, California 95113
Telephone (408) 293-1900
4 | Facsimile (408) 293-1999

5 | Attorneys for Creditor
THE CITY OF SANTA CLARA
6

7

8

9

10 | UNITED STATES BANKRUPTCY COURT

11 | NORTHERN DISTRICT OF CALIFORNIA

12

13 | (San Francisco Division)

14

15 | In re                                              ) Case No. 01-30923 SFM 11
                                                        )
16 | PACIFIC GAS and ELECTRIC COMPANY, ) Chapter 11
a California corporation                                 )
17 |                                                     ) **City Of Santa Clara, dba Silicon Valley**
                                    Debtor.              ) **Power's Reply to Pacific Gas and Electric**
18 | Tax I.D. No. 94-0742640                             ) **Company's Opposition to Motion For**
                                                        ) **Leave to Amend "Known Claim A" in**
19 |                                                     ) **Proof of Claim Number 12602**
                                                        )
20

21

22 |     The City of Santa Clara, dba "Silicon Valley Power" ("SVP") submits the following

23 | reply to Pacific Gas and Electric Company's Opposition to SVP's Motion For Leave to Amend

24 | "Known Claim A" in Proof of Claim Number 12602.

25 | **I.     INTRODUCTION**

26 |     In opposition to SVP's motion for leave to amend its Known Claim A, Pacific Gas and

27 | Electric Company ("PG&E") argues that the motion should be denied because: (1) SVP's

28 | proposed amendment does not "relate back" to its original proof of claim; and (2) SVP is not

1    entitled to amend its claim on the basis of excusable neglect, because SVP has unreasonably
2    delayed in seeking to amend its claim.

3        In this reply, SVP maintains that its proposed amended claim arises from the same series
4    of transactions that underlie its original "Known Claim A," and involve the same energy sales
5    transactions as the original claim and, therefore, the amended claim "relates back" to the
6    original claim. Equitable considerations also weigh in favor of allowing the amendment.

7        In the event the Court determines that the proposed amendment does not relate back to
8    SVP's original proof of claim, SVP requests that the court nonetheless allow the amendment
9    on the basis of excusable neglect. SVP maintains that the earliest that SVP became aware of
10   the facts underlying the proposed amended claim was on January 11, 2007, when SVP deposed
11   PG&E employee Terrence Goodell. At that deposition, SVP learned for the first time any
12   specifics about discussions between PG&E and the CAISO concerning the disputes and what
13   information PG&E had (and had not) provided to the CAISO in the dispute process.

14       Given the circumstances, SVP's delay after discovery of facts supporting an amendment
15   to its claim was not unreasonable. Litigation of SVP's claim has not yet commenced, with the
16   exception of one limited issue. Thus, the lapse of less than one year since SVP discovered
17   facts supporting the amendment has not prejudiced PG&E or its creditors.

18   **II.   ARGUMENT**

19       **A.    SVP's Proposed Amendment Relates Back to SVP's Original Proof of**
20            **Claim.**

21       As this court noted in *In re Pacific Gas & Electric Company,* 311 B.R. 84, 88
22   (N.Cal.Bankr.Ct. 2004), it is the operative facts that control the question of relation back, not
23   the theory of liability applied to those facts. The question is whether the facts alleged in the
24   original claim would *"reasonably alert Debtor to the possibility of assertion of new theories*
25   *based upon those facts to support the amended claims, whether or not those facts or events*
26   *were foreseeable." Id.* at 88-89. In its opposition, PG&E construes the description of Known
27   Claim A and the facts underlying that claim far too narrowly.

28

1      SVP's proof of claim contains allegations that, given what PG&E *alone* knew about the

2   origins of SVP's Known Claim A, should have alerted PG&E to the possibility that SVP would

3   assert breach of fiduciary duty as a theory of liability to support SVP's Known Claim A.

4      In opposition to this motion, PG&E mischaracterizes SVP's Known Claim A as *"simply*

5   *stat[ing] that SVP had made energy sales under the Interconnection Agreement to PG&E and*

6   *that PG&E was contractually liable for the full amount of these sales."* (Opposition, p. 6, lines

7   8-10). PG&E also mistakenly asserts that SVP did not, in connection with Known Claim A,

8   assert that PG&E had liability based on fiduciary and other duties. (Opposition, p. 6, lines 13-

9   14).

10      Nowhere in SVP's proof of claim ("Claim") does SVP limit PG&E's liability for

11   Known Claim A to "contractual liability." The Claim contains a six page attachment which

12   describes the bases for the various subparts of the claim. (A true and correct copy of SVP's

13   Proof of Claim, is attached hereto for the court's convenience as Appendix A). The first four

14   pages of the attachment to the Claim describe the basis for the Claim and include the general

15   statement:

16      *"The City's Known Claims and Reserved Claims include, but are not limited to,*

17   *PG&E's obligations under the 'Supporting Documents' (as defined in Section 7, below), any*

18   *other agreements or understandings between PG&E and the City, any other act or failure to*

19   *act by PG&E (arising in contract, law, equity or otherwise) and PG&E's breach of its duties*

20   *under the Supporting Documents, including fiduciary duties."* (Claim, Appendix A,

21   attachment, p. 1).

22      The Claim states that Known Claim A specifically consists of *"Energy sold to PG&E by*

23   *the City under the Interconnection Agreement between Pacific Gas and Electric Company and*

24   *the City of Santa Clara, as further described in Section 7, Supporting Documents . . ."* (Claim,

25   Appendix A, attachment, p. 2). The amount of Known Claim A is set forth at page 6 of the

26   attachment as $3,241,097.53 (total of invoices A-F).

27      Thus, Known Claim A asserts a claim for non-payment for energy that SVP believed

28   was sold under the Interconnection Agreement. However, SVP specifically provides notice of

1    possible alternative theories of recovery for Known Claim A, including theories based on *"any*
2    *other act or failure to act by PG&E"* including possible breach of fiduciary duties.

3    While the Claim does not specifically allege all facts underlying Known Claim A in the
4    way that a complaint would necessarily allege all facts supporting a cause of action, the Claim
5    does specifically identify the claim as being the amount which remains unpaid for energy sold
6    by SVP in December 2000 and January 2001. The "conduct, transaction, or occurrence"
7    underlying Known Claim A thus consists not only of the energy sales themselves, but the facts
8    and circumstances surrounding the non-payment for that energy. SVP now seeks to
9    specifically assert that the non-payment of Known Claim A directly resulted from a "failure to
10   act by PG&E," including a breach of fiduciary duty by PG&E. This is the same claim amount,
11   arising from the same conduct, transaction or occurrence as is stated in the original Known
12   Claim A, albeit stated more specifically with respect to PG&E's alleged "failure to act."

13   Under these circumstances, SVP's original Claim reasonably alerts PG&E to the
14   possibility that SVP would assert a claim for breach of fiduciary duty as a means of recovering
15   Known Claim A from PG&E's bankruptcy estate.

16   **B.    Equitable Considerations Weigh in Favor of Allowing the Proposed**
17   **Amendment to SVP's Known Claim A.**

18   SVP can demonstrate that it is requesting the proposed amendment in good faith. First,
19   as it presently stands, the original Claim arguably provides latitude for SVP to assert a breach
20   of fiduciary duty claim, even without amendment. SVP is requesting leave to amend its claim
21   out of an abundance of caution and in an effort to apprise PG&E in as specific terms as
22   possible what facts and theories SVP will assert in support of its Claim.

23   Second, SVP was not aware of the specific facts supporting a breach of fiduciary duty
24   claim in October 2001, when SVP filed the Claim, despite PG&E's suggestions to the contrary.
25   In its opposition, PG&E argues that SVP was aware in March of 2001, before SVP filed its
26   proof of claim, *"that PG&E was raising the partial payment issue with the CAISO."*
27   (Opposition, at p. 9, lines 11-12). PG&E then cites a March 27, 2001 letter from Cameron
28   Sammi at PG&E to Wayne Ware at SVP (the "Sammi letter") (attached as Exhibit A to the

1   Declaration of Charles Middlekauf in Opposition to Motion to Amend Claim). The Sammi
2   letter does not disclose, however, the facts that underlie the proposed amendment. The Sammi
3   letter does not: (1) indicate that PG&E has actually initiated formal settlement disputes with
4   the CAISO; (2) indicate that the CAISO and PG&E are having difficulty validating the amount
5   of energy provided by SVP; (3) indicate that PG&E and the CAISO have already met to
6   discuss the CAISO's difficulty in validating the energy provided by SVP; or (4) indicate that at
7   such meeting, neither PG&E nor the CAISO was able to propose or develop a method by
8   which SVP's energy deliveries could be accurately validated. These facts, which support
9   SVP's claim for breach of fiduciary duty, only came to light through the deposition testimony
10  of PG&E employee Terrence Goodell on January 11, 2007.

11      PG&E also points out that SVP became aware, as early as January 2004, that PG&E had
12  submitted actual billing disputes with the CAISO. PG&E appears to be correct on this point.
13  In its moving papers, SVP maintained that it was not aware of the settlement disputes until
14  2006 -2007. In October 2006, PG&E produced copies of the settlement dispute forms in the
15  litigation of the limited Disputed Issue relating to SVP's Claim. That was the first that SVP is
16  aware of receiving copies of the dispute forms. Even then, SVP was not aware of the
17  substance of discussions that had taken place between PG&E and the CAISO, and had no idea
18  what information might have been exchanged between PG&E and the CAISO in the dispute
19  process. The substance of those discussions was not disclosed to SVP until the Goodell
20  deposition. *See,* Declaration of Ken Kohtz in Support of Motion For Leave to Amend Known
21  Claim A in Proof of Claim No. 12602, filed herewith.

22      At Terrence Goodell's deposition, SVP learned for the first time what had transpired in
23  discussions between PG&E and the CAISO during the dispute process. SVP learned for the
24  first time what PG&E and the CAISO did to address the CAISO's difficulty in segregating and
25  validating the quantity of energy that any one specific municipal generator (such as SVP)
26  supplied during emergency conditions.

27      Of significance in Terrence Goodell's testimony is the fact that PG&E was unable to
28  verify to the CAISO the amounts of energy that SVP provided. *See,* Excerpt from Terrence

1    Goodell deposition (pp. 51-53) attached hereto as Appendix B. Also of significance is

2    Terrence Goodell's testimony that PG&E believed in 2001, at the time of the disputes, that the

3    real parties-in-interest in the disputes were the CAISO and SVP (and other energy sellers) and

4    that PG&E left it to the sellers to "press their case" and challenge the CAISO's determinations

5    on the disputes. *See,* Excerpt from Terrence Goodell deposition (pp. 58, lines 5-15) attached

6    hereto as Appendix B.

7        As of Terrence Goodell's deposition, the trial of the limited "Disputed Issue" between

8    SVP and PG&E was scheduled to begin on the first available and mutually convenient trial

9    date after April 30, 2007. *See,* Order on Stipulation Re Scheduling Order For Pacific Gas and

10    Electric Company's Objection to a Portion of the Claim of the City of Santa Clara, dba

11    "Silicon Valley Power" (Claim No. 12602), entered May 19, 2006. If the limited issue had

12    been determined in SVP's favor, any issue regarding PG&E's handling of the CAISO

13    settlement disputes would likely have become moot, since PG&E would have been found to be

14    the purchaser of SVP's energy and would owe SVP for that energy regardless. Further, the

15    litigation of the remainder of SVP's Claim, including any alternative theories of liability for

16    Known Claim A, had not commenced when SVP discovered the additional facts regarding

17    PG&E's handling of the dispute process (and such claims litigation has yet to commence).

18    Thus, there was no apparent urgency in January 2007 to amend SVP's claim to assert the

19    newly discovered facts in support of a breach of fiduciary duty claim.

20        Based on the foregoing facts, there is also no prejudice to PG&E in allowing the

21    proposed amendment. Since claims litigation has not commenced in any meaningful way, not

22    only with respect to SVP's claim, but with respect to all similar generator claims, PG&E is not

23    prejudiced by SVP asserting the specifics of a claim for breach of fiduciary duty. This is

24    particularly true, given that SVP provided notice of the possibility of such a claim in SVP's

25    original proof of claim.

26

27

28

**C.    SVP's Proposed Amendment to Known Claim A May be Allowed as a Late Filed Claim Under the Doctrine of Excusable Neglect.**

In the event that this Court determines that the proposed amendment to SVP's claim does not "relate back" to SVP's original proof of claim, SVP requests that the court allow the amendment as a late-filed claim, on the basis of excusable neglect.

SVP's delay – from January 11, 2007 until December 21, 2007 when it filed this motion – is not unreasonable delay, given that litigation of SVP's claim has effectively been stayed since the claim was filed in October 2001. The argument above, regarding the equities of allowing a "relation back" amendment, also support allowing a late filed claim by SVP.

At the time it filed its original Claim in October 2001, SVP was unaware that PG&E had submitted settlement disputes with the CAISO. Obviously, SVP was also unaware of the manner in which PG&E had handled those disputes. That information was exclusively within PG&E's and the CAISO's control. PG&E was uniquely aware of the facts upon which SVP seeks to assert a claim for breach of fiduciary duty. Given the language of SVP's original Claim, providing notice to PG&E that SVP would assert such a claim, SVP's good faith in bringing a motion to amend its claim within a reasonable time after discovering the additional facts, and the lack of prejudice to PG&E and the creditors of the bankruptcy estate, grounds exist to allow a late-filed claim on the basis of excusable neglect.

**III.    CONCLUSION**

For the foregoing reasons, SVP respectfully requests that the Court grant SVP leave to amend its Claim as requested herein.


DATED: January 18, 2008                    McPHARLIN SPRINKLES & THOMAS LLP



                                           By:    /s/ Paul S. Avilla
                                                  Paul S. Avilla
                                                  Attorneys for CITY OF SANTA CLARA,
                                                  dba, SILICON VALLEY POWER

---

DUE BY SEPTEMBER 5th, 2001
(GOVERNMENTAL UNITS DUE BY OCTOBER 3rd, 2001)

## PROOF OF CLAIM

| UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF CALIFORNIA | Creditor Number  F-923-456475 |
|---|---|

| Debtor Name and Case Number | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| Pacific Gas and Electric Company (Case No. 01-30923) | **FILED** OCT 03 2001 By Robert L. Berger & Assoc., Claims Agent For U.S. Bankruptcy Court Northern District of CA San Francisco Division |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name and Address of Creditor: | Name and Address of Creditor (if different from information shown to the left): | |
|---|---|---|
| CITY OF SANTA CLARA 1500 WARBURTON AVENUE SANTA CLARA, CA 95050 F-923-456475 | City of Santa Clara, California dba Silicon Valley Power (same address) | Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. Check box if you have never received any notices from the bankruptcy court in this case. |
| | Account or other number by which creditor identifies debtor: | |

| The foregoing creditor has been listed on Schedule F of the Amended and Restated Schedules of Assets and Liabilities filed by Pacific Gas and Electric Company, Case No. 01-30923, on July 2, 2001, for a Non-Priority Unsecured claim in the amount of $0.00. | Check one if this claim: replaces a previously filed claim dated: amends a previously filed claim dated: |
|---|---|

**1. Basis for Claim**
- [X] Goods sold
- [ ] Services performed
- [ ] Money loaned
- [ ] Personal injury/wrongful death
- [ ] Taxes
- [X] Other  See attachment incorporated by this reference ("Attachment")

- [ ] Retiree benefits as defined in 11 U.S.C. § 1114(a)
- [ ] Wages, salaries, and compensation (fill out below)

  Your SS #: _____

  Unpaid compensation for services performed

  from _____ (Date) to _____ (Date)

**2. Date debt was incurred**  See Attachment

**3.** If court judgment, date obtained:  See Attachment

**4. Classification of Claim.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another.

**Secured Claim.**
- [ ] Check this box if claim is secured by collateral (including a right of setoff).

  Brief description of Collateral:
  - [ ] Real Estate
  - [ ] Motor Vehicle
  - [ ] Other _____  Value of Collateral $_____

  Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**Unsecured Non-Priority Claim.**
- [X] Check this box if claim is an unsecured claim.

  Unsecured Amount $  See Attachment

**Unsecured Priority Claim.**
- [X] Check this box if you have an unsecured priority claim.
  Amount entitled to priority: $  See Attachment
  Specify the priority of the claim:
  - [ ] Wages, salaries, or commissions (up to $4,650*), earned within 90 days before the filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3)
  - [ ] Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
  - [ ] Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
  - [ ] Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
  - [ ] Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
  - [ ] Other - Specify applicable paragraph of 11 U.S.C. § 507(a) (__).
  *Amounts are subject to adjustment on 04/01/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:**

| $ See Attachment | $ | $ See Attachment | $ See Attachment |
|---|---|---|---|
| (UNSECURED) | (SECURED) | (PRIORITY) | (TOTAL) |

- [ ] Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. CREDITS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. SUPPORTING DOCUMENTS:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If documents are not available, explain. If documents are voluminous, attach summary.

**8. DATE-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a STAMPED, self-addressed envelope and a copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**RECEIVED**
OCT 09 2001
CITY OF SANTA CLARA
CITY ATTORNEY'S OFFICE

| Date 10/1/01 | Sign and print the name and title, if any, of the creditor or the person authorized to file this claim (attach copy of power of attorney, if any): Print: Roland D. Pfeifer    Sign: [signature] Roland D. Pfeifer Assistant City Attorney |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**Appendix A**

## ATTACHMENT TO PROOF OF CLAIM DSUBMITTED BY THE
## CITY OF SANTA CLARA, CALIFORNIA, DBA SILICON VALLEY POWER

### 1. Basis for Claim:

The City of Santa Clara, California ("City"), is a chartered California municipal corporation which, through its Electric Department doing business as Silicon Valley Power, generates, transmits and distributes electric power to nearly 50,000 residential, commercial, institutional and industrial customers within the jurisdictional boundaries of the City.

The City submits this Proof of Claim to assert and preserve any and all claims (as defined in the Bankruptcy Code, codified as 11 U.S.C. §§ 101 et seq.) it has, or may have, against Pacific Gas and Electric Company ("PG&E"). This proof of claim describes all known claims of the City against PG&E (the "Known Claims") and preserves any and all claims it has, or may have, which are: (a) unliquidated, (b) contingent, (c) arising from rejection of executory contracts or unexpired leases; (d) arising as a result of transfer avoidance under chapter 5 of the Bankruptcy Code or (e) unknown (the "Reserved Claims").

The claims included in the term the "Reserved Claims" include any and all claims on any basis (other than the Known Claims), including costs, defenses, contracts, demands, setoffs, recoupments, credits, causes of action, obligations, duties, bonds, accidents, injuries, attorneys fees, expenses, interest, losses, penalties, damages, punitive damages, special damages, rights of contribution and indemnity, whether partial or full, equitable, legal or contractual, and liabilities of all types, whether known or unknown, whether in contract or tort, whether in law or equity, or whether under federal or state law. The Reserved Claims also include the claims of the City in any capacity, whether held as owner, principal, agent, scheduling coordinator, representative, subrogee or beneficiary.

The City's Known Claims and Reserved Claims include, but are not limited to, PG&E's obligations under the "Supporting Documents" (as defined in Section 7, below), any other agreements or understandings between PG&E and the City, any other act or failure to act by PG&E (arising in contract, law, equity or otherwise) and PG&E's breach of its duties under the Supporting Documents, including fiduciary duties.

Some or all of the specific agreements and/or understandings may be characterized by PG&E as executory contracts, which PG&E has yet to assume or reject. Nothing herein is intended to waive any rights or defenses that the City may have on any basis or theory, including, without limitation, under any applicable tariffs or other applicable law, that these agreements

ATTACHMENT TO PROOF OF CLAIM OF THE CITY OF SANTA CLARA, CALIFORNIA          Page 1 of 6

and/or understandings are or are not executory contracts or subject to rejection. For these and other reasons, the exact amounts of the City's claims are subject to change and some or all of the City's claims may have priority. The City reserves the right to amend and/or supplement this proof of claim in the future.

This proof of claim is filed in an abundance of caution and without prejudice to the right of the City to contend that:

1. PG&E's performance under some or all of the agreements is not subject to modification in this bankruptcy case and must be performed in full;

2. PG&E's performance under some or all of the agreements is required by law, including, without limitation, Federal Energy Regulatory Commission ("FERC") tariffs and regulations, California Public Utilities Commission ("CPUC") tariffs and regulations and 28 U.S.C. § 959(b);

3. PG&E's obligations under some or all of the agreements are entitled to administrative priority in the bankruptcy case; and/or

4. The City's rights are property rights which are not subject to modification in this bankruptcy case.

With regard to any objection to its claims, the City reserves its right to require mediation and/or arbitration to the extent provided in the relevant Supporting Documents, or elsewhere.

Known Claims: The City's Known Claims, which existed as of the petition date, total *Three million two hundred eighty five thousand six hundred twelve dollars and 44 cents ($3,285,612.44)* which consists of: the following:

A. Energy sold to PG&E by the City under the Interconnection Agreement between Pacific Gas and Electric Company and the City of Santa Clara, as further described in Section 7, Supporting Documents, Contracts, Sections 1 and 2 and Invoices A – F, below; and

B. Covanta Energy Invoice for Royalties Due to City, as further described in Section 7, Supporting Documents, Invoice G, below.

Reserved Claims include, but are not limited to, the following:

A.    Rate Refund claims – Under Contract 2948A, as further described in Section 7, Supporting Documents, Contracts, Sections 1 and 2, below, and PG&E's Section 205 filing, the City may be subjected to increased rates commencing in October, 2001. By FERC order, these rates are subject to refund if the City should prevail in defeating the rate increase. The refund amounts are presently unknown. The City maintains that these refunds would be entitled to administrative expense priority.

B.    Rejection Damage Claims – Subject to all the reservations made above, in the event the Court were to allow the rejection of Contract 2948A (or any other contract, agreement or understanding to which the City is party, a beneficiary or subrogee), the City will assert a claim for all pecuniary loss, including consequential damages and interest. Such consequential damages may include any damages arising out of the City inability to perform its own obligations to third parties and the damages from those breaches. The pecuniary loss will also include the cost of cover in obtaining substitute power.

C.    California Power Exchange ("PX") and California Independent System Operator ("ISO") market claims - The City entered into a Participation Agreement with the California Power Exchange Corporation. The City was a seller and a purchaser of energy and/or ancillary services in the PX market. This market operates without matching buyers and sellers on most transactions. As of the petition date, the City had sold energy or ancillary services into this market for which it has not received payment totaling four hundred ninety-five thousand three hundred ninety-three dollars ($495,393.00) consisting of the unpaid portion of energy sales to the PX for the months of November and December, 2000 (subject to adjustment). The City asserts a claim in this amount, plus any applicable pre-petition interest and costs (including attorneys fees) plus claims for the PX's retention of collateral and credit support for the City's putative obligations to PX arising out of PG&E's defaults.

The assertion of this claim is not intended to preclude efforts by PX to collect amounts owed by PG&E to PX for the benefit of the City and the other sellers into that market. As to PX, this is intended not to preclude PX from collecting

amounts due from the State of California for the commandeering of block forward contracts.

If any part of the interest of PX and/or ISO in any property claimed by PG&E constitutes a security, trust beneficiary, ownership or other interest therein, the City asserts the same interest. In describing this Reserved Claim, the City does not intend to waive any claim it has against PX and/or ISO on any basis.

D. A claim against PG&E for the disproportionate share of ISO and/or PX liability assessed against the City due to PG&E's defaults.

E. Environmental Cleanup Liability Claims — A claim against PG&E for environmental cleanup liability assessed against the City in excess of its share as a result of PG&E's defaults.

F. Damage Claims - A claim against PG&E for damages to the City proximately caused by PG&E's defaults of any kind or nature.

G. Security Deposit - In conjunction with the Interconnection Agreement between Pacific Gas and Electric Company and the City of Santa Clara, as further described in Section 7, Supporting Documents, Contracts, Sections 1 and 2, below, the City deposited a deposit as security for its obligations under the Interconnection Agreement in the amount of five million ($5,000,000) dollars. This amount, plus accumulated interest, is due and owing to the City when this agreement expires in April, 2002.

2. Date Debt was Incurred:

As to the Known Claims, the specific date the debt was incurred is the date of the agreement represented by the relevant Supporting Documents or the date of PG&E's default, which is known to PG&E. The specific dates for the Reserved Claims are not yet known because of their contingent and unliquidated nature at this time.

3. If Court Judgment, Date Obtained:

Specific Supporting Documents represent settlement agreements concerning judicial and regulatory proceedings involving the City and PG&E which have or may have the force of

judgments or final regulatory adjudications. The dates of such settlement agreements are stated in the relevant Supporting Documents.

4. Classification of Claim:

The Known Claim is entitled to treatment as either a secured claim under 11 U.S.C. § 506 to the extent it is subject to setoff by a related claim of PG&E against the City or, to the extent the setoff was preserved under the terms of a setoff stipulation with PG&E, administrative priority to the extent of the setoff.

5. Total Amount of Claim at Time Case Filed:

The Known Claim is in the amount of three million two hundred eighty-five thousand six hundred twelve dollars and and 44 cent ($3,285,612.44).

The Reserved Claim amount is unknown. Therefore, the City reserves its right to amend this Proof of Claim.

7. Supporting Documents:

The following documents are voluminous and are not attached, but will be provided by the City if desired by the Court. Other supporting documents are or may be in the possession of or under the control of PG&E.

| Contracts | Execution Date |
|---|---|
| 1. Contract No. 14-06-200-2948A Interchange & Transmission Agreement. | February 7, 1992 |
| 2. Contract No. 14-06-200-2948A Interchange & Transmission Agreement. | July 31, 1967 |
| 3. Interconnection Agreement | September 30, 1983 |
| 4. 50M Bulk Power Sale and Purchase Agreement | December 16, 1986 |
| 5. 1995 System 50MW Bulk Power Sale Amendment | March 7, 1995 |
| 6. Grizzly Settlement | February 20, 1990 |
| 7. Grizzly Development and Mokelumne Settlement Agreement | March 8, 1990 |
| 8. Amendment #1 to Grizzly Development and Mokelumne Settlement Agreement. | June 11, 1991 |

ATTACHMENT TO PROOF OF CLAIM OF THE CITY OF SANTA CLARA, CLAIFORNIA                    Page 5 of 6

9.  Amendment #2 to Grizzly Development and Mokelumne Settlement Agreement.                                                                    March 7, 1995

10. Application No. 90-06-007 Petition for Modification of Decision 90-12-123 to Recognize Minor Amendment to the Underlying Settlement Agreement                                                                      October 8, 1991

11. Grizzly Operation and Maintenance Agreement                              December 30, 1995

12. Gas Transmission Service Agreement                                       February 17, 1998

13. Natural Gas Service Agreements                                           January 30, 1998

14. Settlement Agreement                                                     April 21, 1997

15. Combustion Turbine Operation Agreement                                   April 22, 1997

## Invoices

A.  Silicon Valley Power Invoice No. #35337 dated January 12, 2001;
B.  Silicon Valley Power Invoice No. #35606 dated February 13, 2001;
C.  Remittance advice from PG&E dated March 30, 2001 for partial payment;
D.  Summary schedule of amounts invoiced, paid and unpaid portions;
E.  Statement of June 30, 2001 from Cal-PX;
F.  PG&E retail accounts from Silicon Valley Power;
G.  Covanta Energy Invoice for Royalties Due to City

Summary of Invoices:

Invoices A – F total:   $3,241,097.53

Invoice G – F totals:   $   44,514.91

Total:                  $3,285,612.44

\\SPRUCEweb2\DATA\WP\ELECTRIC\PG&E-BK\PG&E POC Attachment 10-01-02.doc   10/2/01 3:45 PM

January 11, 2007                                    Terrence Lee Goodell

## In re Pacific Gas and Electric Company

```
              UNITED STATES BANKRUPTCY COURT
              NORTHERN DISTRICT OF CALIFORNIA
                  SAN FRANCISCO DIVISION
In re PACIFIC GAS AND    )   Case No. 01-30923 DM
ELECTRIC COMPANY, a      )
California corporation,  )   Chapter 11 Case
                         )
                Debtor.  )
                         )
Federal I.D. No.         )
94-0742640               )


           DEPOSITION OF TERRENCE LEE GOODELL

Date:           Thursday, January 11, 2007
                1:03 p.m

Place:          Pacific Gas & Electric Company
                77 Beale St.
                San Francisco, CA


Reported by:    Linda J. Pugliese, C.S.R.
                License No. 4764




                     CRS, INC.
          CERTIFIED COURT REPORTERS AND VIDEO
            111 W. Saint John St., Suite 420
                San Jose, CA  95113
          (408) 298-3376    Toll Free (866) 998-7870
               depos@computerreporting.com
```

# Appendix B

www.computerreporting.com   CRS, INC. depos@computerreporting.com
\(408) 298-3376        Court Reporters and Video        (866) 998-7870
       Case: 01-30923    Doc #: 16297    Filed: 01/18/2008    Page 1 of 5

```
1    BY MR. AVILLA:
2         Q.   In the meeting that you had with the ISO, did
3    you propose to the ISO any way, any different way that
4    they could verify the amounts of energy that were being
5    provided?
6         A.   I don't think so.  I guess what -- I don't
7    think we -- we could figure out any other way to verify
8    the amounts of energy that was provided.  I think the
9    gist of what we were trying to convince the ISO was that
10   they had to look at the whole portfolio, and they
11   couldn't look at specific resource I.D.s.  And the
12   way -- they separate out their deviation settlements by
13   there's a deviation on load and there's a deviation on
14   supply.  So they were focusing on the supplies, and they
15   were saying you didn't deliver all of your energy, so
16   we're not going to pay you.
17             And like I explained before, that the
18   principal thing we were trying to get them to understand
19   is that supply meter could be lower, a lot lower than
20   the schedule, for valid reasons under their
21   interconnection agreement.  And they needed to go and
22   look at the load and see if the load meter had dropped a
23   corresponding amount.
24             And in that case, if let's say the supply had
25   dropped 25 megawatts and the load meter dropped
```

www.computerreporting.com   CRS, INC. depos@computerreporting.com
\(408) 298-3376        Court Reporters and Video        (866) 998-7870

1    25 megawatts, then any supply above that amount was
2    excess energy. So in this example, if they had sold
3    25 megawatts of excess energy but their supply meter was
4    25 megawatts below their schedule, the ISO said, well,
5    they didn't deliver anything.

6             And what we were trying to convince the ISO is
7    that, no, you can't look at it that way. If it dropped
8    25 and the load dropped 25, they did deliver the
9    25 megawatts of excess energy. Because they have, under
10   their interconnection agreement, they could change their
11   schedule anytime -- some of them 20 minutes into the
12   hour. And so it's the -- the ISO rule of the deviation
13   is calculated from your hour ahead final schedule was
14   working against the fairness of these payments.

15            So that was the gist of the discussion we were
16   having, was getting them to understand that they had to
17   net out the supplies and the loads, and they had to do
18   it across the whole portfolio because one party may be
19   selling to another party within the portfolio. So there
20   was all these complications that could happen that are
21   all legitimate. And if you didn't take all of those
22   into consideration, then you would unfairly penalize the
23   seller of that excess energy.

24            So that's the gist of the discussion, was
25   getting them to understand that they had to look at the

Page 52

www.computerreporting.com   CRS, INC. depos@computerreporting.com
\(408) 298-3376         Court Reporters and Video         (866) 998-7870

Case: 01-30923   Doc #: 16297   Filed: 01/18/2008   Page 3 of 5

1    whole portfolio.  And if the portfolio overdelivered
2    supply, then they had to make some leaps and decide who
3    delivered the excess energy of all these different
4    sellers.

5         So sometimes you couldn't determine for sure
6    who didn't deliver and who did.  And I don't remember
7    exactly what we did, but I would imagine at that time
8    then we maybe did a pro rata reduction of all of those.
9    So that was the gist of the discussion at that time at
10   the ISO.

11        Q.   Was it the case that logical meter -- a
12   logical meter scenario would even complicate that
13   further because you have aggregation within one meter of
14   both load and supply; is that right?

15        A.   Yeah.  That was part of the problem, but in
16   some cases, it was just the amount of flexibility that
17   the ETCs had to do transactions within this portfolio
18   didn't fit with the ISO's way of scheduling and
19   reporting those transactions.  So it was just -- this
20   stuff has been a headache from day one.  And the ISO
21   didn't necessarily -- they don't necessarily grasp all
22   the ins and outs of the math doing this.  And so we were
23   presenting to them what we thought was the best and
24   fairest way to do the settlement.

25        Q.   Was it also the case that if a particular

www.computerreporting.com   CRS, INC. depos@computerreporting.com
\(408) 298-3376        Court Reporters and Video        (866) 998-7870

```
 1    determinations on these disputes with anyone within
 2    PG&E?
 3          A.    I have no specific recollection of reviewing
 4    any of the resolutions with anyone in PG&E.  I may have.
 5          Q.    Do you recall any discussions about whether
 6    PG&E should in any way challenge the ISO's
 7    determinations on these disputes?
 8          A.    I don't recall any discussions.  I have a
 9    recollection of being told that this -- these, really
10    these transactions were between the seller and the ISO,
11    and somebody was going to tell the seller that they
12    really needed to press their case with the ISO.  So
13    based on that, I'm gathering that I didn't spend a whole
14    lot of time once the resolution came out pushing them
15    forward.
16          Q.    Do you know who it is that told you that the
17    sellers would be told that they should press these
18    issues with the ISO?
19          A.    No, I just -- I have a recollection of
20    discussions, meetings, and PG&E coming to that
21    conclusion, but I don't specifically remember who said
22    it or -- I imagine that probably whoever was the manager
23    at the time was the one who was officially on the hook
24    for making that decision.
25          Q.    Up to the point where you received the ISO's
```

Entered on Docket
**February 07, 2008**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  CHARLES R. MIDDLEKAUFF
   Bar No. 148346
2  PACIFIC GAS AND                        **Signed and Filed: February 07, 2008**
   ELECTRIC COMPANY
3  P.O. BOX 7442
   San Francisco, California 94120
4  Telephone: (415) 973-6971
   Facsimile: (415) 973-5520                        **DENNIS MONTALI**
5  Email: crmd@pge.com                          **U.S. Bankruptcy Judge**

6  SEDGWICK, DETERT,
   MORAN & ARNOLD LLP
7  GAYLE L. GOUGH, Bar No. 154398
   AMBER RYE BRUMFIEL, Bar No. 215181
8  One Market Plaza
   Steuart Tower, 8th Floor
9  San Francisco, California 94105
   Telephone: (415) 781-7900
10 Facsimile: (415) 781-2635
   Email: amber.rye@sdma.com
11
   Attorneys for Reorganized Debtor
12 PACIFIC GAS AND ELECTRIC COMPANY

13                    UNITED STATES BANKRUPTCY COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15                         SAN FRANCISCO DIVISION

16 In re PACIFIC GAS AND ELECTRIC              CASE NO. 01-30923 DM
   COMPANY, a California corporation,
17                                             Chapter 11 Case
                 Debtor.
18                                             **ORDER DENYING CITY OF SANTA
                                               CLARA, DBA SILICON VALLEY
19                                             POWER'S MOTION FOR LEAVE TO
   Federal I.D. No. 94-0742640                 AMEND "KNOWN CLAIM A" IN PROOF
20                                             OF CLAIM NUMBER 12602
21
                               **ORDER**
22

23     The hearing on the City of Santa Clara dba Silicon Valley Power's ("SVP") *Motion for Leave to

24 Amend "Known Claim A" in Proof of Claim Number 12602* ("Motion") was held on February 1, 2008 at

25 10:00 a.m. before the Honorable Judge Montali.  Charles R. Middlekauff of Pacific Gas and Electric

26 Company ("PG&E") appeared on behalf of PG&E.  Paul S. Avilla of McPharlin Sprinkles & Thomas

27 LLP appeared on behalf of SVP.

28                                         -1-
   ORDER DENYING CITY OF SANTA CLARA, DBA SILICON VALLEY POWER'S MOTION
   FOR LEAVE TO AMEND "KNOWN CLAIM A" IN PROOF OF CLAIM NUMBER 12602
                                                        CASE NO. 01-30923 DM

1    Having considered all of the pleadings and evidence submitted and for the reasons stated on the

2    record at the hearing, IT IS HEREBY ORDERED that SVP's Motion is denied.

3    Certificate of Service filed on 02/05/2008 docket entry number 16298.

4    ** END OF ORDER **

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
-2-
ORDER DENYING CITY OF SANTA CLARA, DBA SILICON VALLEY POWER'S MOTION
FOR LEAVE TO AMEND "KNOWN CLAIM A" IN PROOF OF CLAIM NUMBER 12602
CASE NO. 01-30923 DM

1  McPHARLIN SPRINKLES & THOMAS LLP
   ELAINE M. SEID (Bar No. 72588)
2  PAUL S. AVILLA (Bar No. 120458)
   10 Almaden Blvd, Suite 1460
3  San Jose, California 95113
   Telephone (408) 293-1900
4  Facsimile (408) 293-1999

5  Attorneys for Creditor
   THE CITY OF SANTA CLARA
6

7

8

9

10            UNITED STATES BANKRUPTCY COURT

11            NORTHERN DISTRICT OF CALIFORNIA
12

13                      (San Francisco Division)

14

15  In re                          )  Case No. 01-30923 SFM 11
                                    )
16  PACIFIC GAS and ELECTRIC COMPANY, )  Chapter 11
17  a California corporation        )
                                    )  Declaration of Ken Kohtz in Support of
18              Debtor.             )  City Of Santa Clara, dba Silicon Valley
                                    )  Power's Motion For Leave to Amend
19  Tax I.D. No. 94-0742640         )  "Known Claim A" in Proof of Claim
                                    )  Number 12602
20                                  )

21

22

23       I, Ken Kohtz, declare as follows:

24       1.    I am an employee of the City of Santa Clara, dba "Silicon Valley Power" in the

25  City's Resources Department ("SVP"). I first became employed at SVP in the Fall of 2001.

26  My duties since that time have included, among other things, monitoring and facilitating SVP's

27  involvement in proceedings before the Federal Energy Regulatory Commission, as well as

28  being involved in the prosecution and attempts to settle SVP's claim in the PG&E bankruptcy.

1    This declaration is being submitted in support of SVP's Motion For Leave to Amend Known

2    Claim A in Proof of Claim Number 12602. This declaration is to clarify the timing of SVP's

3    discovery of substantive facts supporting SVP's proposed amendment to its proof of claim.

4        2.      PG&E is correct that SVP learned, possibly as early as January 2004 or before,

5    that PG&E had previously submitted settlement disputes to the California Independent System

6    Operator ("CAISO") with respect to the SVP energy sales that are the subject of SVP's Known

7    Claim A in the PG&E bankruptcy. SVP learned that information via various discussions with

8    or communications from the CAISO or PG&E, some of which were during SVP's attempts to

9    explore potential settlement of its claim. While general information was disclosed to SVP that

10    PG&E had previously submitted disputes, I do not recall SVP receiving any substantive or

11    detailed information regarding the disputes or what precise correspondence had transpired

12    between PG&E and the CAISO during the dispute process.

13        3.      In October, 2006, in discovery in the limited claims litigation between SVP and

14    PG&E (on the issue of whether SVP's claim arose from energy sales to PG&E or to the

15    CAISO) PG&E produced copies of the dispute forms it had submitted to the CAISO in early

16    2001. I do not recall SVP receiving copies of the actual dispute forms before that time.

17    Furthermore, the actual dispute forms contain limited information about the nature of the

18    disputes. The forms indicate the quantities and prices of energy, trading zones and hours for

19    which the CAISO's settlement is being contested, and indications of the CAISO's

20    determinations on the disputes. The dispute forms do not contain any substantive information

21    about what transpired between PG&E and the CAISO during the dispute process, other than to

22    indicate that *"several meetings were held in order to determine appropriate resolution for this*

23    *issue, at this time discussions continue."* *See,* excerpt of Trial Exhibit 26, attached hereto as

24    Exhibit A.

25        4.      On January 11, 2007, at the deposition of Terrence Goodell in discovery in

26    litigation of the limited Disputed Issue, SVP learned substantially more about the substance of

27    the discussions that took place in meetings between PG&E and the CAISO during the

28    settlement dispute process and discovered information at that time that SVP believes support a

1    claim against PG&E for breach of fiduciary duty. To my recollection, prior to January 11,

2    2007, neither PG&E nor the CAISO had disclosed to SVP the details of their discussions, as

3    was disclosed in Terrence Goodell's deposition.

4         5.    The breach of fiduciary duty claim that SVP is seeking to assert is based on the

5    premise that PG&E had information at the time of the disputes from which PG&E should have

6    been able to accurately verify the quantity of energy supplied by SVP. What became clear

7    from Terrence Goodell's deposition is that PG&E apparently failed to provide or adequately

8    explain that information to the CAISO, and then PG&E apparently failed to appropriately

9    challenge the CAISO's determinations and allowed the appeal period to lapse without, in a

10   timely manner, seeking SVP's assistance in filing or prosecuting such disputes.

11

12        I declare under penalty of perjury under the laws of the United States that the foregoing

13   is true and correct and that this declaration was executed on January 18, 2008.

14

15

16                                                      Ken Kohfz

17

18

19

20

21

22

23

24

25

26

27

28

20270 goodell PGAE_UNINSTRUCTED_120400 (3).doc

# SETTLEMENT DISPUTE FORM

### DETAILS OF DISPUTE

Please fill in the boxes below with the details of the dispute.

| | | | |
|---|---|---|---|
| BA Number | 1015 | BA Name | PGAE |
| BA Contact | Terrence Goodell | BA Contact Phone # | (415) 973-3757 |
| Statement Date | 01/30/01 | Statement # | 39959 |
| Charge # | 407(Uninstructed Energy) | Line Item # | various |
| Trade Date | 12/04/00 | Trade Hour | various |

### DETAILS OF DEVIATIONS (Charge Types 407)

Type of Deviation

Location ID

Zone ID.        NP15

---

UNINSTRUCTED ENERGY 407:
DISPUTE DOLLAR AMOUNT (to be completed by the BA)
*Please state the dollar amount that you are disputing. (Difference between the settlement statement and what you believe the bill should be.)*
**$-98,200.00**    (- indicates amount due PG&E)

---

DISPUTE TYPE (to be completed by BA)

Quantity Dispute.

Additional comments: The CAISO needs to manually adjust for OOM prices agreed to, for excess energy sold to ISO, by NCPA and Santa Clara, but settled under CT 407.

20270 goodell PGAE UNINSTRUCTED 120400 (3).doc

| DISPUTE DETAIL (to be completed by BA) |
|---|
| *Please give specific details to explain the exact nature of the dispute.* |
| Attached Spreadsheet supports the calculation of CT407 Charge type. |
| |
| *Please provide supporting data to prove your claim.* |

| Resource ID: | Zone: | Trading Hour: | PG&E MW | ISO MW | Difference: | $Difference: |
|---|---|---|---|---|---|---|
| PGAEPGE3 | NP15 | 18 | 48 | 0 | 48 | $-24,000.00 |
| PGAEPGE3 | NP15 | 19 | 64 | 0 | 64 | $-32,000.00 |
| PGAEPGE3 | NP15 | 20 | 20 | 0 | 20 | $-10,000.00 |
| PGAECSC1 | NP15 | 18 | 24.5 | 0 | 24.5 | $-9,800.00 |
| PGAECSC1 | NP15 | 19 | 28.5 | 0 | 28.5 | $-11,400.00 |
| PGAECSC1 | NP15 | 20 | 27.5 | 0 | 27.5 | $-11,000.00 |

| ACTION LOG |
|---|
| *Detailed description of action taken.* |
| Several meetings were held in order to determine appropriate resolution for this issue, at this time discussions continue. It was agreed, however, to resolve the existing disputes based on the previous agreement, that is, the system will pay by Demand Zone up to the $250 cap through Uninstructed Deviation, and through a manual adjustment, each will be paid up to the agreed price for delivered energy only (amounts that are determined to have not been leaning on the system). |
| |
| For this issue, the request for adjustment for PGE3, for HE 18 and 19 and CSC1 for HE 18 - 20 has been denied. Research shows that PGAE was already compensated in CT407 (system payment) and CT 401 (manual payment) for the delivered energy (supporting file attached). |
| |
| A manual adjustment was made for PGE3 for HE 20, interval 6 (3.33 MW @ $250) because the original manual adjustment only compensated PGAE for intervals 1 - 5. |

| RESOLUTION OF DISPUTE |
|---|
| *Final resolution of dispute.* |
| *Partially accepted.* |

STATUS OF DISPUTE
Resolved

PGE0254

1  McPHARLIN SPRINKLES & THOMAS LLP
   ELAINE M. SEID (Bar No. 72588)
2  PAUL S. AVILLA (Bar No. 120458)
   10 Almaden Blvd, Suite 1460
3  San Jose, California 95113
   Telephone (408) 293-1900
4  Facsimile (408) 293-1999

5  Attorneys for Creditor
   THE CITY OF SANTA CLARA
6

7

8

9              UNITED STATES BANKRUPTCY COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                    (San Francisco Division)

12

13

14  In re                              )  Case No. 01-30923 SFM 11
                                       )
15  PACIFIC GAS and ELECTRIC COMPANY,  )  Chapter 11
    a California corporation           )
16                                     )  **NOTICE OF APPEAL**
                         Debtor.       )
17                                     )
    Tax I.D. No. 94-0742640            )
18                                     )
                                       )
19                                     )

20

21      Pursuant to section 158(a)(1) of Title 28 of the United States Code, Creditor

22  City of Santa Clara dba "Silicon Valley Power", hereby appeals to the United

23  States District Court for the Northern District of California from the Order
24
25  Denying City of Santa Clara, dba Silicon Valley Power's Motion for Leave to

26  Amend "Known Claim A" in Proof of Claim Number 12602 ("Order") entered by
27
    the Bankruptcy Court in this proceeding on February 7, 2008.
28

1    The names of all other parties to the Order appealed from and the names,

2    addresses and telephone numbers of their respective attorneys are as follows:

3

4    **Debtor:**    Pacific Gas and Electric Company

5    **Represented by:**  Charles R. Middlekauf
                          Pacific Gas and Electric Company
6                         P.O. Box 7442
                          San Francisco, CA 94120
7                         Tel (415) 973-6971

8                         Amber Rye Brumfiel
9                         Sedgwick, Detert, Moran & Arnold LLP
                          One Market Plaza
10                        Steuart Tower, 8th Floor
                          San Francisco, CA 94105
11                        Tel (415) 781-7900

12

13   DATED: February 22, 2008                McPHARLIN SPRINKLES & THOMAS LLP

14

15                                By:   /s/ Paul S. Avilla
                                        Paul S. Avilla
16                                      Attorneys for CITY OF SANTA CLARA,
                                        dba, SILICON VALLEY POWER
17

18

19

20

21

22

23

24

25

26

27

28

1

1  Y                UNITED STATES BANKRUPTCY COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3                      (SAN FRANCISCO DIVISION)

4

5  In re:

6  PACIFIC GAS AND ELECTRIC              Case No. 01-30923
   COMPANY, a California
7  Corporation,                         Chapter 11

8                                        San Francisco, California
                                         February 1, 2008
9                                        10:20 a.m.
            Debtor.
10  _____/

11                      TRANSCRIPT OF PROCEEDINGS
12    HEARING ON CITY OF SANTA CLARA, dba SILICON VALLEY
      POWER'S MOTION FOR LEAVE TO AMEND "KNOWN CLAIM A" IN
13              PROOF OF CLAIM NUMBER 12602

14          BEFORE THE HONORABLE DENNIS MONTALI
                UNITED STATES BANKRUPTCY JUDGE
15

16
   APPEARANCES:
17
   For P.G. & E.:           PACIFIC GAS & ELECTRIC COMPANY
18                          BY: CHARLES R. MIDDLEKAUFF, ESQ.
                            P.O. Box 7442
19                          San Francisco, California 94120

20

21
   For the City of          McPHARLIN, SPRINKLES & THOMAS, LLP
22  Santa Clara:            BY: PAUL S. AVILLA, ESQ.
                            10 Almaden Boulevard, Suite 1460
23                          San Jose, California 95113

24

25

2

```
 1 | APPEARANCES (CONTINUED):
 2 |
 3 |
 4 | Court Recorder:        COOPER GLOSENGER
   |                        UNITED STATES BANKRUPTCY COURT
 5 |                        235 Pine Street
   |                        San Francisco, California 94104
 6 |
 7 |
 8 | Transcription Service:  Jo McCall
   |                         Electronic Court
 9 |                         Recording/Transcribing
   |                         2868 E. Clifton Court
10 |                         Gilbert, Arizona 85297
   |                         Telephone: (480) 361-3790
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
```

3

1              P R O C E E D I N G S
2   February 1, 2008                    10:20 a.m.
3                    ---oOo---
4         THE CLERK: Matter of <u>Pacifi Gas and Electric</u>
5   <u>Company.</u>
6         THE COURT: Good morning.
7         MR. MIDDLEKAUFF: Good morning, Your Honor,
8   Charles Middlekauff for P.G. & E.
9         MR. AVILLA: Good morning, Your Honor, Paul Avilla
10  for the City of Santa Clara.
11        THE COURT: Good morning.  Well, why don't I tell
12  you a tentative decision.  I didn't have time to send
13  something on to you in writing, but I -- Mr. Avilla, I
14  think Mr. Middlekauff's got the stronger case here on the
15  issue of -- leaving aside anything about excusable neglect
16  or whatever, it's a question of a statute of limitations
17  type question, and I think that your theory of breach of
18  duty implicates a different fact pattern.  I don't think,
19  for example, that I could take the record that we had from
20  the prior trial and simply dispose of your legal arguments
21  on that record.  I think you have to prove some other
22  facts, subsequent facts, particularly because by
23  definition, as you know better than I, but all three of us
24  do know, the operative facts that were tried were facts
25  that occurred prior to and up to January of '01.

4

1          The breach of duty if there was a breach of duty
2    occurred subsequent to that.  So by definition, that
3    strikes me as implicating new facts and it's not that
4    simple.  I mean even if you said, just it's a matter of
5    law; there's a breach of fiduciary duty, there may be facts
6    that would exculpate or exonerate P.G. & E.

7          So, you know, I expressed to you some concerns
8    and confusion when we had the trial about well, what is the
9    other thing upcoming.  I guess in retrospect, it would have
10   been a whole different situation if there had been a motion
11   for leave to amend the claim originally before the trial.
12   But I think that P.G. & E. would still have the same
13   argument.  It's new operative facts, therefore new
14   deadlines.  So my tentative thinking, based upon that
15   reasoning, is to deny this motion.  But with that
16   background, go ahead if you want to make an agreement.

17          MR. AVILLA: Thank you, Your Honor.  I think that
18   the point to make is that the trial, keep in mind, was on a
19   very limited and bifurcated issue, that the parties had
20   sort of log jammed over in settlement discussions.  The
21   claim itself is much broader, and according to the language
22   of the original Proof of Claim included theories of breach
23   of fiduciary duty in all manner of legal theories to
24   recover on the claim.  So --

25          THE COURT: But if we analogize as I often do, the

5

1  Proof of Claim to a complaint, where are the operative
2  facts that give rise to the breach of duty in the
3  allegations of the complaint -- excuse me -- of the claim?
4          MR. AVILLA: Well, it references the sales and the
5  amount that's due for the sales of energy --
6          THE COURT: Right.
7          MR. AVILLA: -- that occurred in that December of
8  2000 time frame.
9          THE COURT: I agree.  I agree.
10         MR. AVILLA: Correct.
11         THE COURT: But there was no breach of duty then.
12 As I understand your motion, the breach of duty is later
13 when they didn't follow up with, you know, the -- the ISO.
14 How can I forget the ISO?
15         (Laughing.)
16         MR. AVILLA: It's not as though the Proof of Claim
17 alleges, you know, all the facts in the nature of a
18 complaint that underlie the claim.  It identifies the
19 claim, the amount, the sales.  It reserves all theories of
20 recovery, to recover the amount that's due for those
21 sales --
22         THE COURT: But when did the breach occur -- if
23 there was a breach of duty, when did it occur?
24         MR. AVILLA: It would have occurred after -- it
25 would have occurred in 2001, early 2001, during the dispute

6

1  process that P.G. & E. undertook with the ISO.  It relates
2  to the same sales that are referenced in our "Known Claim
3  A."  It's that same amount.

4           THE COURT: I guess where I'm having a problem
5  is -- of course, historically, it references the sale, but
6  as I understand your argument, it is P.G. & E. as your
7  agent, as your scheduling coordinator, said -- you're
8  saying, scheduling coordinator, you have a duty to go press
9  our claim vis-a-vis Cal ISO, and you breached that duty
10  when you didn't press that claim or didn't give us notice
11  that you weren't pressing the claim.  And those are facts
12  that are removed from the events of December '00 and
13  January '01, on the energy sales.

14           MR. AVILLA: But, Your Honor, the Proof Claim
15  isn't limited to facts of December 2000 or January 2001.
16  It simply says our claim consists of various sub parts.
17  "Known Claim A" is for 3.2 million dollars of energy sales,
18  and we believe we're under the Interconnection Agreement,
19  but we're reserving all rights of recovery or all theories
20  of recovery to recover that amount from P.G. & E.  We
21  carved out a simple limited issue that focused on the
22  contractual basis for that liability.  That was tried.  We
23  haven't gotten into what other theories of recovery there
24  may be to recover, and so I don't believe that the facts of
25  the Proof of Claim are limited to December of 2000 on the

7

1   first page of the Proof of Claim.

2           THE COURT: Well, I'm looking at it. I have it

3   here. You mean the attachment, the first page of the

4   attachment or the -- I'm looking at the first page of the

5   attachment.

6           MR. AVILLA: Right. Your Honor, the second to

7   last paragraph:

8               "The City's known claims and reserved claims

9               include but are not limited to obligations under

10              the supporting documents and any other agreements

11              or understandings and any other act or failure to

12              act by P.G. & E."

13          THE COURT: But do you agree with me that in order

14  to prove your theory, if I grant you this leave to amend

15  the Proof of Claim, there will an investigation and inquiry

16  as to other facts, facts that are subsequent to the last

17  energy sale in January. Agreed?

18          MR. AVILLA: That's agreed.

19          THE COURT: Okay. So --

20          MR. AVILLA: What I don't agree is that this Proof

21  of Claim is limited to --

22          THE COURT: Okay. But I want to draw an analogy

23  if I may to a complaint. If I sue you on a promissory

24  note, and I throw into the complaint, I'm suing you on this

25  note but I'm also reserving all other rights to sue you

8

1   under.  Does that toll the statute of limitations?  Could I
2   then come in later and sue you under some other theory
3   saying well, I reserved my rights?  I mean how does
4   reserving rights avoid a running of a statute of
5   limitations?

6           MR. AVILLA: Because it relates to the non-payment
7   of that same amount that's on the promissory note.  If you
8   have a different theory of recovery for those same
9   dollars --

10          THE COURT: But it's not a different theory of
11  recovery on the facts as alleged and as the facts that we
12  tried and you were unsuccessful on.  We had facts of the
13  energy sales, not of a breach of the duty.

14          MR. AVILLA: But the point is, we did not try all
15  of the facts related to our Proof of Claim.  We tried a
16  very limited factual issue.  We haven't litigated this
17  Proof of Claim.

18          THE COURT: Well, you know, I continue to express
19  my confusion about why this is done piecemeal.  I'm
20  wondering does that mean we're going to have yet another
21  trial on some other theory under this Proof of Claim?

22          MR. AVILLA: It's possible.

23          THE COURT: Well, okay.  Go ahead with any other
24  argument you want to make.

25          MR. AVILLA: Well, I think we've addressed the

9

1 matters in our paper. Again, to the extent that the Proof
2 of Claim alleges facts, those are not limited. We do not
3 believe they're limited to December of 2000. They
4 reference sales that were made then, but, you know,
5 implicate any of P.G. & E.'s actions or failure to act with
6 respect to those amounts, and this is the same amount that
7 we're seeking recovery for. And it's really, in light of
8 the Court's ruling that P.G. & E. was not the purchaser of
9 the energy and was instead acting in the role of scheduling
10 coordinator, which really confirms -- should confirm our
11 right to assert this theory.

12          THE COURT: I have no doubt that you could have
13 asserted the theory as an alternative theory. My point is
14 that I go to the second page of the attachment to the Proof
15 of Claim, and there are the specific references to the
16 dollar, to the penny, about energy sold to P.G. & E. by the
17 City under the IA, and so on. And now admittedly, it
18 doesn't say in December of 2000, but there's no question
19 that those were the -- as I recall -- that those were the
20 unpaid periods of time, and that was certainly the evidence
21 for proof.

22          But what you want to do is to say, because you
23 left this sort of open-ended thing, like we're reserving
24 all claims, that somehow that protects you against the
25 deadline. I gave you a hypothetical and then didn't let

10

1  you answer it.  If I sue you under a promissory note and I
2  throw into the complaint that I'm reserving all my other
3  claims, have I protected against the statute running on,
4  let's say, a tort theory that I might have had that I could
5  have sued you on but didn't?

6          MR. AVILLA: I think it comes down to fair notice,
7  and I think if your complaint not only said reserve all
8  other claims but say specifically fiduciary duty, okay, and
9  the facts of the transaction described in the complaint are
10 such that the defendant was acting in a role that was a
11 fiduciary capacity with respect to that same transaction,
12 and you've specifically identified fiduciary duty as a
13 possible theory of recovery in your complaint, the facts
14 support that with respect to the transaction.  Then the
15 question is, is that defendant on fair notice of the
16 possibility that a claim is going to be asserted, and I
17 would say, on these facts, it is.

18         THE COURT: But where's the fair notice that
19 P.G. & E. is going to be faulted for breaching a duty after
20 January of '01, and I've forgotten the exact date, but you
21 just reminded me, it was later in the year when it did its
22 thing with Cal ISO and didn't follow up on it.

23         MR. AVILLA: Well, it's right here, Your Honor.
24         THE COURT: Where?
25         MR. AVILLA: P.G. & E. looks at this Proof of

11

1  Claim and they say, well, the City has described this as a
2  sale to us.  We don't believe we were acting as the
3  purchaser of the energy; we were acting as the scheduling
4  coordinator.

5          THE COURT: But where's the allegation that the
6  relevant facts for this theory are the failure of your
7  fiduciary to prosecute your interests before the Cal ISO?

8          MR. AVILLA: Well, we didn't know the specifics of
9  that at the time this Proof of Claim was filed.  But
10  P.G. & E. did.  I mean P.G. & E. had already -- in fact
11  this Proof of Claim was filed in late 2001.  Six months
12  prior was when they were involved in this dispute
13  supposedly advancing the rights of the City with the ISO to
14  try and collect these very same dollars.  So I mean it's
15  not a leap for a defendant to realize, hey, I've been
16  acting in the role of scheduling coordinator.  I've been
17  representing the interests of my scheduling coordinator
18  client, prosecuted this claim for these very same dollars
19  with the ISO.  I mean I think that's fair notice that facts
20  could be discovered by us that we weren't aware of at the
21  time about the way that that dispute was processed that
22  would give rise to a breach of fiduciary duty claim.

23          THE COURT: Okay.  Mr. Middlekauff?

24          MR. MIDDLEKAUFF: Your Honor, just to address very
25  quickly the claim itself, and we laid out most of our

1   arguments in our briefs, and I won't go over those. But
2   actually, if you look at the language, I would have two
3   comments for you. One is I think what -- the language here
4   is very generic and to say a party is put on notice by this
5   kind of generic language, what you're going to get is every
6   single Proof of Claim you'll ever get will have a statement
7   that any act or failure to act arising in contract law,
8   equity or otherwise, that could be anything. And basically
9   you open the door to someone by simply inserting some very
10  generic language, always coming back, in this case six
11  years later, and saying, oh, we really meant this, or we
12  really meant that. That's one point.

13          THE COURT: Well, you don't -- I mean there's no
14  denying that it all begins with the sales in December and
15  January. I mean those were the only unpaid points at issue
16  here.

17          MR. MIDDLEKAUFF: Right. Those are. And, Your
18  Honor, I agree, the December 2000 and January 2001 sales
19  are the sales at issue, but the other point I would make
20  about this language is, it refers to breach of duties under
21  the supporting documents, and if you look at the list of
22  supporting documents, which are on pages 5 and 6, none of
23  these documents concerns being a scheduling coordinator and
24  in fact all of these documents precede the ISO.

25          So, you know, if you were to say we were on fair

13

1   notice about breaching a duty and the duty is based on the
2   supporting documents and all of the documents predate the
3   ISO, which predated our role as a scheduling coordinator,
4   how could you say we were on fair notice about --

5           THE COURT: Yeah, I understand your point.  I mean
6   I think what I heard from counsel was that you were on
7   notice that SVP wasn't paid for the two months at issue,
8   and you knew -- and you knew that there was this dialogue
9   going on between P.G. & E. and the Cal ISO that ended the
10  way it ended.  I mean that's what you're saying.

11          MR. MIDDLEKAUFF: Yeah, and I don't think that's
12  sufficient to say that we were on notice when they filed
13  their claim that those would be issues, and the other
14  points we've raised in our briefing, Your Honor, is all
15  along the way over the last six years, they've had ample
16  opportunity to raise this, to ask for leave to amend, to
17  give us notice, and it really wasn't until there was an
18  adverse judgment that all of a sudden it was oh, and here's
19  this new theory or claim, and we want to amend our claim.

20          THE COURT: Well, but are you saying that if they
21  had come in prior to the trial and sought leave to amend
22  that you wouldn't have had that argument, presuming you
23  make all these other arguments?

24          MR. MIDDLEKAUFF: Right.  If they had come in
25  prior to the trial, but it may of course change what we

14

1   agreed to bifurcate --

2           THE COURT: Well, but I think SVP is saying we

3   didn't really know all this stuff until -- Mr. Coates'

4   (Phonetic) declaration I think says -- when, in January of

5   last year, just a year ago.

6           MR. MIDDLEKAUFF: Right.  Which I think if you

7   look at the facts and you look at the evidence that we put

8   in is inaccurate.  I think that, you know, even Mr. Coates

9   recognizes that they received the documents in discovery in

10  October of '06.  We've put in documents showing

11  communications with the ISO as early as 2004 and in 2005.

12          THE COURT: Well, now again, Mr. Middlekauff,

13  because there's this history of SVP and P.G. & E. sort of

14  dicing this dispute into little pieces, there's no --

15  nobody's playing "got you" here right?  I mean this wasn't

16  an issue that you all agreed that would be tried later, I

17  take it.

18          MR. MIDDLEKAUFF: No.

19          THE COURT: I mean I didn't -- when I saw the

20  motion originally, I thought oh, I wonder if that's what

21  the complaint is going to be, that you agreed to this all

22  along, but I didn't see any of that.  And I'm asking the

23  question because I'm pretty sure I did know the answer.

24          MR. MIDDLEKAUFF: No, we didn't agree that this

25  would be an issue that would be addressed later.

15

1            MR. AVILLA: Your Honor, can I just respond to one
2  thing about this six-year delay. This claims litigation
3  has been stayed from the time that the claim was filed, so
4  the fact there's been a six-year delay is in large part due
5  to the fact that the proceedings back at FERC -- you know
6  all these claims were waiting for those proceedings to
7  conclude before the claims would even be litigated.

8            THE COURT: Yeah, listen, I'm not as troubled as
9  Mr. Middlekauff is about that. I think that I'm still sort
10  of focusing on the point that I tried to explain in the
11  tentative ruling that this comes down -- in my mind, it
12  comes down to a simple matter of where you and I differ,
13  Mr. Avilla, is whether there are different operative facts.
14  To me, you've got to plead operative facts and if it were
15  the same set of facts, then putting a different legal label
16  on it is easy. I don't think there's a problem there. But
17  the breach is something that is different. It's not the
18  operative facts that we tried before.

19            So I think the whole point that I stress is that
20  that's where I'm persuaded that P.G. & E. has got the
21  stronger case here, that these things weren't fairly
22  noticed in that Proof of Claim, and therefore you can't
23  come in, sort of after the fact. Frankly, although it may
24  never have come to that, I like to think intellectually
25  that I would have made the same ruling if I had been asked

16

1   to do it in 2002. So it doesn't mean that it's six years;

2   it's when that claims bar date occurred. That seems to me,

3   that closes the door on the new theories. Whether I'm

4   right or wrong, that's my thinking about it, that's all.

5            So I'm going to go ahead and deny the motion for

6   these reasons, and ask Mr. Middlekauff to submit an order

7   that can simply recite the appearances and the calling of

8   the motion and for the reasons stated on the record, the

9   motion is denied.

10           Now having said that, I guess the question is,

11  are we going to have more litigation here? I think I asked

12  the question before when I made the ruling, whether you

13  wanted a final order. I never know -- I don't know when

14  this is going to be over. SVP certainly has a right to

15  appeal my decision if it wants. But what are we going to

16  do to get a final order in this claims dispute?

17           MR. MIDDLEKAUFF: Your Honor, we do have a status

18  conference with you scheduled for February 29th, and so I

19  think that probably -- because we haven't had a chance to

20  talk about it and kind of think through it, that may be a

21  better time to address that.

22           THE COURT: Okay. All right. Well then you go

23  ahead and please submit that order, and Mr. Avilla, I

24  understand the arguments. I'm not making light of them. I

25  just think it's -- I just want you to know so you can

17

1  explain to your clients that's my thinking on the subject.

2  Right or wrong, that's what it is.

3              MR. AVILLA: Understood.  Thank you, Your Honor.

4              THE COURT: See you on the 29th at the status

5  conference.

6              MR. AVILLA: All right.

7              MR. MIDDLEKAUFF: Thank you, Your Honor.

8      (Whereupon, the proceedings are concluded at 10:39

9  a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

18

1
2
3
4
5
6                    CERTIFICATE OF TRANSCRIBER
7
8
9           I certify that the foregoing is a correct
10   transcript from the digital sound recording of the
11   proceedings in the above-entitled matter.
12
13
14   DATED:   March 16, 2008
15
16                    By: /S/ Jo McCall
17
18
19
20
21
22
23
24
25